[No. 5306.]

GEORGE HAGER v. JONAS SPECT.

POWER OF ATTORNEY. — If a party relies on a grant of land under a power
of attorney, the authority of the attorney must be shown.

CONVEYANCE.—Where two owned a tract of land in undivided moieties, and
a conveyance of an undivided two-thirds of the tract was made by one in
his own name and as the attorney in fact for his cotenant: *held*, that as the
authority to act as attorney in fact did not exist, the deed would be regarded
only as the sole deed of, and as passing the undivided half interest held by,
the party executing the conveyance.

DEED.—A deed will be construed most strongly against the grantor.

DESCRIPTION.—If there be conflicting descriptions in a deed, that which is
most strongly against the grantor will be adopted.

ESTOPPEL.—Though an estoppel might exist in favor of a *bona fide* purchaser
against a person assuming to act under a power of attorney not executed by
the owner of land, there is no estoppel in favor of such *bona fide* purchaser
against one who purchases subsequently from the agent (he having acquired
the title) *his* interest in the premises, such party subsequently purchasing
having no notice of the existence or contents of the purported power.

ESTOPPEL IN PAIS. — Matter constituting estoppel *in pais* is not within the
Registry Act.

RECORDING.— The intention of the Registry Act of 1851, in requiring convey-
ances to be recorded, was to give notice to subsequent purchasers that the
*owner* had parted with or incumbered his estate by a conveyance in his own
name, or by his attorney in fact.

IDEM.—The record of a power of attorney, not given by the *owner*, is not within
the act.

NOTICE.—The only effect of the Recording Act is to give notice of the contents
of an instrument by which the land of the grantor is conveyed or may be
affected—that is to say, of some right, title, or interest conveyed to or vested
in the party to whom the instrument is made.

APPEAL from the District Court of the Tenth Judicial Dis-
trict, County of Colusa.

Defendant appeals.

The action is ejectment; both plaintiff and defendant relying
on different chains of title traced from the patentees of the Ji-
meno Rancho. The opinion states the facts.

*S. T. Kirk* and *A. L. Hart*, for the Appellant.

*W. C. Belcher* and *W. F. Goad*, for the Respondent.

By the COURT:

Action for the recovery of the possession of block 90, in the
Town of Colusa. Both parties claim title under a patent issued

to Larkin and Missroom, as the confirmees of the Jimeno Grant. The Court below found the title to the undivided five-sixths of the premises in controversy was in the plaintiff, and one-sixth in the defendant. The defendant appeals from the judgment and the order denying a new trial.

The first conveyance by either of the confirmees was made on the 23rd day of September, 1851, and purports to have been made by Larkin, for himself, and by Missroom, by Larkin as his attorney in fact, to Seawall and Hastings; and the deed purports to convey an " undivided two-thirds part of the following described tract or parcel of land, to wit : Two Spanish leagues, (or *dos sitios de ganado mayor*) or land on the west bank of the Sacramento River, part of the land formerly known as the Colus Trust, including the Town of Colusa, being a part of the eleven Spanish leagues granted by Don Manuel Micheltorena " to Jimeno, and sold by him to said Larkin and Missroom. The two leagues are further described by reference to a grant to Bidwell, a sale by him to Semple, and a Sheriff's sale under execution against Semple.

It is unnecessary, for the purposes of this appeal, to determine whether the description is sufficient to amount to a conveyance of the whole of the " two Spanish leagues of land " ; but the inquiry may be limited to the question whether an undivided interest in the premises in controversy was conveyed. The two leagues mentioned in the deed are described as " including the Town of Colusa." The evidence shows that the town is within the bounds of the Jimeno Grant; that at the time of the execution of the deed a map of the town had been made ; that the northern and southern limits of the town had been fixed and established on the ground ; that stakes had been set at the corners of several of the blocks; that a number of houses had been built; and that as applications were made for the purchase of lots, surveys were made in accordance with the map. From the fact that the Court found that the defendant had title to an undivided sixth of the block of land in controversy, and that he deraigns title under that deed, it is to be inferred that the Court found that the Town of Colusa had been laid out before the execution of the deed, and that the block in controversy is a portion

of the land which was then recognized as within the limits of that town. If the decision in that regard be correct, it must be held that the deeds conveyed an interest in the lands within the town, however uncertain other descriptive portions of the deed may be.

The deed was executed by Larkin, and purports to have been executed by Missroom, by Larkin, his attorney in fact, but it does not appear that Missroom had constituted Larkin his attorney in fact. The deed, therefore, is to be regarded only as the deed of Larkin. At the time of its execution he held the title to the undivided half of the land conveyed, and it must be construed as conveying his undivided half, although it purports to have been executed by Missroom, who was an owner of the title in common with Larkin.

The record does not contain any conveyance from Seawell and Hastings—the grantees in that deed—to the plaintiff or his grantors, and the decision that the plaintiff was the owner of the undivided five-sixths of the land was not sustained by the evidence, for he could not have acquired the title to more than three-sixths unless he acquired it under the deed to Seawell and Hastings.

The defendant claims that the evidence shows that no interest in the Town of Colusa passed to the plaintiff under the deeds through which he deraigns title. By one of these deeds, William J. Eames conveyed to S. A. and James Morrison an undivided quarter of " nine Spanish leagues of land    *    *    commencing two Spanish leagues below or southerly from the tract of land on said river known as the rancho of Larkin's children, and running thence along with said river southerly nine Spanish leagues, and one league back or westwardly from said river," being part of the Jimeno grant, " which said tract was conveyed to said William J. Eames by Henry Coggill and wife," by deed dated May 31st, 1852 ; " and being the same tract of land conveyed to the said Samuel A. Morrison and James Morrison by the said William J. Eames (as the attorney in fact of the said John S. Missroom) by deed bearing date the 20th day of April, A. D. 1852." The deed last referred to describes the land conveyed as " lying and being southerly and below the Town of Colusa."

The proposition is, in effect, that this description controls and limits all the other descriptive words in the deed of Eames to Morrison and Morrison. The first two descriptions appear, both from the words themselves and the extrinsic evidence relating to the boundaries of the land, to be as certain as the third description; and therefore, in accordance with the rule requiring the deed to be construed most strongly against the grantor, it must be held that the first two descriptions prevail over the third; and as the evidence shows that the Town of Colusa is included within the first two descriptions, it must be held that the deed conveyed an undivided fourth of the Town of Colusa.

Eames held that interest.

It is further contended by the defendants that the land in controversy is excepted from the deed of Missroom to Coggill; and if not in fact excepted, that Eames, and the plaintiff claiming under him, are estopped to assert title to the premises. The deed contains the following exceptions: " Also excepting therefrom such parts thereof as may be sold by agent of said parties of the first part [Missroom and wife] before receiving due notice of this conveyance." The defendant introduced in evidence a power of attorney, dated September 24th, 1851, executed by Larkin and Missroom to Eames; also by Seawell and Hastings to Carpenter, authorizing him to convey lots in Colusa; and he also introduced a deed dated December 12th, 1861, purporting to have been executed to Monroe by Larkin, Missroom, Seawell, Hastings, and Hughes, by Carpenter, their attorney in fact, conveying the premises in controversy. It is claimed that the power of attorney and the deed (both of them having been made before the deed of Missroom to Coggill) prove that the premises therein described are within the exception contained in the deed of Missroom to Coggill. But we are of the opinion that this position cannot be sustained, for they do not prove, as against Missroom, that Eames was his agent.

For the purpose of this appeal, it will be assumed that as against Eames the power of attorney to Carpenter created an equitable estoppel which precluded him from denying, as against a *bona fide* purchaser deraigning title under the power, that he

had competent authority from Missroom to execute it. But however complete the estoppel would have been as against Eames, it is unavailing as against a subsequent *bona fide* purchaser from him, without notice of the existence and contents of the power. (Herman on Estoppel, sec. 332.) There is no proof in the record, and it is not claimed that the purchasers from Eames had actual notice of the existence and contents of the power. But it may be claimed by the defendant they had constructive notice, from the fact that the power was recorded before the subsequent purchasers from Eames took their conveyance. The solution of this question will depend upon the proper construction of the Registry Act of 1850, which was then in force.

Sec. 24 provides that "every conveyance whereby any real estate is conveyed, or may be affected, proved, or acknowledged, and certified in the manner prescribed in this act, to operate as notice to third persons, shall be recorded," etc. Sec. 25 provides that "every such conveyance, certified and recorded in the manner prescribed in this act, shall, from the time of filing the same with the Recorder for record, impart notice to all persons of the contents thereof," etc. Sec. 27 provides that "every power of attorney, or other instrument in writing, containing the power to convey any real estate as agent or attorney for the owner thereof, or to execute as agent or attorney for another, any conveyance whereby any real estate is conveyed or may be affected, shall be acknowledged or proved, and certified and recorded as other conveyances whereby real estate is conveyed or effected, are to be acknowledged or approved, and certified and recorded." Sec. 36 provides that "the term 'conveyance,' as used in this act, shall be construed to embrace every instrument in writing by which any real estate or interest in real estate is created, aliened, mortgaged, or assigned, except wills, leases for a term not exceeding one year, executory contracts for the sale or purchase of lands, and powers of attorney."

In considering the point under review, we shall waive the question whether, under these provisions, the record of a power of attorney to convey real estate imparts notice of its contents to subsequent purchasers in the same manner as though it was

a conveyance; and for the purposes of the decision shall assume that in this respect they stand upon the same footing. Treating them in this light, the sole purpose in requiring them to be recorded, in so far as they might affect subsequent purchasers, was to give them notice that the *owner* had parted with or incumbered his estate in the land by a conveyance made either by himself directly, or through an attorney in fact. If, however, it should appear that the owner had in fact made no conveyance—that his pretended deed was a forgery, or, if purporting to be made by an attorney, that the attorney had no authority to execute it, it is clear the record could impart no notice of a fact which did not exist. In such a case the pretended conveyance would be an absolute nullity, and though recorded, the record would impart no notice of its contents to a subsequent purchaser.

The design and purpose of the Registry Act being to impart notice by the record to subsequent purchasers that the owner of the estate had conveyed or incumbered it: an instrument made by a stranger to the title, without authority, and which can in no wise affect the estate of the owner, does not come within the purview of the statute.

In the case at bar, Eames had no authority to appoint an attorney to convey the title of Missroom; and the instrument by which he attempted to do this was a nullity, which in no wise affected the title or estate of Missroom. It could, of course, impart no notice of anything done by Missroom when he had done nothing in the premises. If the record of it could be deemed constructive notice of anything, it could only be of the fact that Eames had executed the instrument. But it was not a conveyance by Missroom, the owner of the land, nor a power of attorney from him to Carpenter, either directly or indirectly; but simply the unauthorized act of Eames, assuming to act for Missroom. The provisions of the Registry Act, already quoted, do not make the record of such an instrument notice of its contents to any one or for any purpose. We are therefore of opinion that the record of it did not impart notice of its contents to the subsequent purchasers from Eames, who in the meantime had acquired the title of Missroom.

Looking at this question from another point of view, the conclusion is the same as already stated. The matter, in respect to which the statutory notice is imparted to subsequent purchasers and mortgagees by means of the record, is, as prescribed by sec. 24, the contents of the conveyance of land or of some interest therein—that is to say, the contents of a "conveyance" as defined by sec. 36, conveying, or purporting to convey, the real estate, or some interest therein, of the person who executed the instrument, or by which, in the language of sec. 24, his real estate "may be affected." Thus the record of a deed or mortgage, made by a person, whether he then held the title or interest purported to be conveyed or mortgaged or not, is constructive notice to his subsequent purchasers or mortgagees of some right, title, or interest in the same premises. But it is only the record of the "conveyance," made by a person of his lands or some interest therein, which imparts constructive notice to his subsequent purchasers and mortgagees; and the record of no other instrument charges them with no such notice. Now, in this case, the power of attorney to Carpenter, executed by Eames, as the attorney in fact of Missroom, was not and did not purport to be a conveyance of the real estate of Eames, or of any interest therein; and therefore the record thereof did not impart constructive notice of its contents to subsequent purchasers from him. The mode in which the defendant proposes to affect the purchasers from Eames is by showing that they had notice of matters which amounted to an estoppel *in pais* as against Eames, and therefore charged them, or the estate, while in their hands. Conceding that the record charged them with notice of the deed to Monroe by Carpenter, as the attorney in fact of Missroom, and of the instrument whereby Eames, as the attorney in fact of Missroom, purported to substitute Carpenter as such attorney in fact, does the notice have the effect claimed for it? As already stated, the record is notice of the contents of an instrument by which the land of the grantor is conveyed or may be affected—that is to say, of some right, title, or interest conveyed to or vested in the party to whom the instrument is made. The chief effect of the notice is to give priority to the recorded instrument and cause subsequent pur-

chasers and mortgagees to take whatever interest they would otherwise have acquired, subject and subordinate to the right, title, or interest acquired by the prior purchaser.or mortgagee. It gives to the purchaser or mortgagee mentioned in the recorded instrument a better right, title, or interest than that which is acquired by the subsequent purchaser or mortgagee. The statute does not declare that it shall have the effect to give notice of matter which will only operate as an estoppel *in pais;* and it is difficult to conceive how, under the provisions of the statute, it can have other or further effect than as above indicated. But even if its effect be not thus limited, it is clear that it will not amount to notice of a matter constituting an estoppel *in pais,* as against one who is not a party to the instrument.

Judgment and order reversed, and cause remanded for a new trial.