[Civ. No. 2831. First Appellate District, Division One.—July 7, 1919.]

# THOMAS P. HALE, Appellant, v. LUCY PENDER-GRAST et al., Respondents.

[1] NOTICE—INSTRUMENTS NOT ENTITLED TO RECORDATION.—An instrument not entitled to go upon record is not constructive notice although recorded.

[2] ID.—SALE OF LAND—REPURCHASE AGREEMENT—LACK OF ACKNOWLEDGMENT—ATTACHMENT TO ACKNOWLEDGED NOTICE.—An agreement to repurchase land within a given time at the request of the vendee not acknowledged, either by the vendor or the vendee, is not entitled to be recorded. Neither does the fact that such repurchase agreement is physically attached to, and by reference made a part of, a purported notice, signed and acknowledged by the vendee, add to its function as imputing notice.

[3] VENDOR AND VENDEE — REPURCHASE AGREEMENT — VALIDITY OF. — A vendor and vendee may lawfully enter into an agreement giving the latter the option within a given time to require the former to repurchase the property.

[4] ID.—ASSIGNMENT OF NOTE AND MORTGAGE BY VENDOR—EXERCISE OF REPURCHASE OPTION — RIGHT OF ASSIGNEE TO FORECLOSE.— Where a person sells real property, taking a note and mortgage as part payment, and at the same time enters into a repurchase agreement, and thereafter, but prior to the exercise of the repurchase option, sells and assigns the note and mortgage to a third person who has no knowledge of the repurchase agreement, the latter may, upon default being made in the payment of the note, maintain an action against both the vendor and vendee to foreclose the mortgage on the property, notwithstanding that theretofore the latter has exercised her option to require the former to repurchase the property from her.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge. Reversed.

The facts are stated in the opinion of the court.

Theodore Hale and J. E. Pemberton for Appellant.

1. Record of instrument not entitled to be recorded as actual notice, note, 38 L. R. A. (N. S.) 400.

3. Validity and effect of agreement by vendor to repurchase, note, L. R. A. 1917C, 763.

W. D. L. Held and Mannon & Mannon for Respondents.

WASTE, P. J.—Plaintiff brought this action to foreclose a mortgage. Judgment was entered for the defendant and plaintiff appeals.

The defendant and respondent Waldteufel was the owner of the lands and premises in Mendocino County, described in the mortgage sought to be foreclosed. He agreed with the defendant and respondent Mrs. Pendergrast that he would sell and convey the said lands and premises to her, for the purchase price of ten thousand dollars, payable two thousand dollars in cash, and eight thousand dollars according to the terms of the promissory note and mortgage sued on in this action, and, as part of the same transaction, Waldteufel agreed with defendant Pendergrast that he would repurchase the said premises from her, for the sum of ten thousand dollars, at any time within one year from the date of the consummation of her purchase, if she should elect to so require.

Mrs. Pendergrast agreed with Waldteufel to purchase said premises from him on said terms, and on the twenty-fifth day of August, 1916, Waldteufel conveyed said premises to her by a grant, bargain, and sale deed and she paid him therefor the sum of two thousand dollars, and made, executed, and delivered to him the promissory note for eight thousand dollars and mortgage which is sought to be foreclosed in this action. The note was payable in eight equal installments of one thousand dollars each, beginning one year after date, with interest from date at the rate of six per cent per annum, payable semi-annually.

As a part of the same transaction, defendant Waldteufel on the same day made, executed, and delivered to his co-defendant the following receipt:

"August 25th, 1916.

"Received of Lucy Pendergrast the sum of two thousand dollars ($2,000) as first payment of the Waldteufel ranch in Redwood Valley, Mendocino county, California, consisting of 70 acres of the former 'Beasore ranch' (describing the boundaries thereof); also all personal property on said 70 acres (with certain exceptions), and growing crops also all water and water rights. Balance of $8,000.00 to be paid at the rate of $1,000 per annum with interest on de-

ferred payments at six per cent per annum payable semi-annually. Said J. A. Waldteufel agrees to buy said premises back from said Lucy Pendergrast at any time within one year for $10,000 if she so elects, but has no option to buy unless called upon to do so by her.

"(Signed) J. A. WALDTEUFEL.

"I agree to the above contract.

"(Signed) MRS. LUCY PENDERGRAST."

The lower court found that this receipt was duly acknowledged and entitled to record, and was duly recorded September 14, 1916. The manner of its recordation will be referred to presently.

On the thirty-first day of March, 1917, after the first installment of interest had been paid, defendant Waldteufel, for a good and valuable consideration, duly sold and assigned the note and mortgage of Mrs. Pendergrast to plaintiff, which assignment, the court found, was duly recorded in the office of the county recorder of Mendocino County. No actual notice to plaintiff of the collateral agreement to repurchase, made between the two defendants, is pleaded, or attempted to be proved. So far as the record discloses there was no notice, other than whatever constructive notice may be imputed to plaintiff, by the placing of record in the recorder's office of that document, in the manner hereinafter set·forth. Waldteufel did not disclose to plaintiff the true situation until just before the foreclosure action was commenced.

On the eighth day of August, 1917, the defendant Pendergrast elected to, and did, require the repurchase of said premises by the defendant Waldteufel, under the terms of his agreement, and on said date Waldteufel accepted from Mrs. Pendergrast a deed of said premises, containing this clause: "This deed is made pursuant to instrument recorded in Book 147 of Deeds, page 292, records of said county, and the intention is to convey to the grantee all the property and right acquired by the grantors by that certain deed recorded in Book 146 of Deeds, at page 90, records of said county. The grantee assumes all the encumbrances on said property subject to all the equities and defenses of the grantors."

The first installment of the principal, one thousand dollars, was not paid when it became due, and plaintiff in-

stituted this action. Upon these facts, which appear in the findings, the trial court made another finding to the effect that plaintiff ever since the date of the assignment of the mortgage to plaintiff by Waldteufel, "has been and now is the true and lawful owner of said note and mortgage, subject to the rights and equities of the defendant Lucy Pendergrast," under and by virtue of her agreement of repurchase made and entered into with defendant Waldteufel, and that notwithstanding the terms of said promissory note there never has become due thereon the sum of one thousand dollars or any other sum on account of principal thereof. Judgment was thereupon entered, in accordance with the findings, that plaintiff take nothing by the action.

From the testimony it appears that the recordation of the collateral agreement, or receipt, wherein Waldteufel agreed to repurchase the mortgaged land from Mrs. Pendergrast, was accomplished as follows: Some time after the closing of the transaction, and before the assignment by Waldteufel to the plaintiff, Mrs. Pendergrast caused to be prepared by her attorney a purported notice, written at the bottom of the repurchase agreement and on the same sheet of paper. This notice stated that "the foregoing receipt was given on the sale of the said Waldteufel ranch, and that a promissory note and mortgage dated August 6, 1916, and recorded [setting out the record], was given in consideration of the sale of said ranch, and all and each of the terms of the above and foregoing receipt and agreement, and all assignees of said promissory note and mortgage are hereby notified accordingly, and they take said note and mortgage subject to my equity and defense as set forth in said receipt and agreement." This notice was signed by Mrs. Pendergrast, acknowledged by her alone, and subsequently recorded in the book of deeds in the recorder's office.

Appellant contends that the document did not affect title to the land, was not entitled to be recorded in the book of deeds, was acknowledged only by the obligee, not by the person to be bound, and was therefore never so recorded as to give constructive notice. [1] An instrument, not entitled to go upon record, is not constructive notice, although recorded. (*Parkside Realty Co.* v. *MacDonald*, 166 Cal. 426, 431, [137 Pac. 21].) [2] The repurchase agree-

ment of August 25, 1916, was not acknowledged by either Waldteufel or Mrs. Pendergrast. Of itself, therefore, it was not entitled to be recorded. Niether does the fact that it was physically attached to, and by reference made a part of, the purported notice, signed and acknowledged by Mrs. Pendergrast add to its function as imputing notice. "Any instrument or judgment affecting the title to or possession of real property may be recorded under" chapter IV of the Civil Code, relating to the recording of transfers. (Civ. Code, sec. 1158.) By "instrument," as used in this section, is meant "some written paper, or instrument, signed and delivered by one person to another, transferring the title to, or creating a lien on property, or giving a right to a debt or duty." (*Hoag* v. *Howard,* 55 Cal. 564, 565.) The supreme court, in that case, after a careful examination of the various sections of the Civil Code, included in the chapter on recording transfers (*supra*), continues: "Reference is particularly made to sections 1195 and 1215. Section 1195 relates to the proof of the execution of the instrument, and provides that it may be proved 'by the party executing it, or either of them.' Section 1215 defines the meaning of the term 'conveyance' as used in the two preceding sections, as embracing 'every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to real property may be affected, except wills.'" (*Hoag* v. *Howard, supra.*)

Measured by the foregoing test the purported notice of Mrs. Pendergrast was not entitled to recordation and imparted constructive notice to no one.

[3] The repurchase agreement between Mrs. Pendergrast and Waldteufel was one which the parties had the right to make, and one which they did voluntarily and expressly enter into. (*Davis* v. *Davis,* 19 Cal. App. 797, 800, [127 Pac. 1051].) [4] On the repurchase of the ranch being required by Mrs. Pendergrast it mattered not to Waldteufel to whom the purchase money should be paid. If Mrs. Pendergrast was satisfied that she owed plaintiff the eight thousand dollars on the note and mortgage, Waldteufel cannot, after agreeing to pay the indebtedness, claim that nothing is due. (*Washer* v. *Independent M. & D. Co.,* 142 Cal. 708, [76 Pac. 654].) "An agreement on the part

of a grantee to pay and discharge a mortgage debt upon
the granted premises, for which his grantor is liable,
renders the grantee liable to the mortgagee, and in an
action for the foreclosure of the mortgage, if the mortgaged
premises are insufficient to satisfy the mortgage debt, judg-
ment may be rendered against him as well as against the
mortgagor for the amount of the deficiency. This liability
results from the familiar doctrine in equity that a creditor
is entitled to the benefit of all securities, or collateral ob-
ligations, that his principal debtor may have given to the
surety for the payment of the debt. By the conveyance of
the mortgaged premises, and the assumption of the mort-
gage debt by the grantee, the latter, as between him and
his grantor, becomes primarily liable to the mortgagee, and
his vendor becomes his surety. (After citing cases.) The
argument of these cases is that a party who expressly
agrees to pay a particular debt, which the person contract-
ing with him admits that he owes to a third party, cannot
thereafter be heard to say that the debt is not owing."
(*Davis* v. *Davis, supra.*)

That Waldteufel and Mrs. Pendergrast well understood
the nature of the transaction relating to the repurchase of
the land is indicated by the testimony of the latter. To
do other than apply the law we have just quoted to the
facts of this case would, for reasons which must be ap-
parent to anyone, be most inequitable and unjust.

The claim of the respondent, based upon the collateral
agreement to repurchase, is that the mortgage of Mrs.
Pendergrast conferred upon its holder a right of foreclos-
ure only in case she failed to demand repurchase, and
repayment, within the year, and thereafter breached the
conditions of the mortgage, that is, that plaintiff took only
such rights as Waldteufel had under the original transac-
tion. Almost the identical claim was made in the case of
*Merchants' Bank of Buffalo* v. *Weill,* 163 N. Y. 486, [79
Am. St. Rep. 605, 57 N. E. 749]. The facts of that case
are so similiar with those of the case at bar as to be "on
all-fours" with it, except that in that case no attempt was
made to record the collateral agreement, while here the
attempt failed. It was there said: "When this assignment
was made, there was no defense to the mortgage. It was
a subsisting and valid obligation for the amount expressed

as owing by Weill, and his present defense to the enforcement of his liability arises from his exercising an option, conferred by an unrecorded and collateral agreement, to rescind the sale of property, and thus be relieved from the obligation growing out of it. But this could not be said to have been a defense to the mortgage existing at the time of the assignment, for it was one which was brought into existence by the mortgagor at a time subsequent. *Non constat* that he would ever exercise his option to rescind under the collateral agreement, and whether he would do so would depend upon events and considerations subsequently occurring, and influencing its exercise.'' The court held that the plaintiff there, who was in the same position as the plaintiff here, was entitled to enforce the appellant's liability (the same as Mrs. Pendergrast here) for any deficiency arising from a sale of the mortgaged premises.

The judgment is reversed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 4, 1919, and the following opinion then rendered thereon:

THE COURT.—On application for a hearing in this court after decision by the district court of appeal of the first appellate district, division one.

The opinion of the lower court discusses the recordability of the notice by the defendant Pendergrast. In this portion of the opinion we are not ready to concur without further consideration. It is immaterial, however, whether it was recordable or not. In any event the contract of repurchase between the defendant Waldteufel and Mrs. Pendergrast, if the latter chose to avail herself of it, would have been a good defense to an action by Waldteufel to foreclose the mortgage. Being a good defense against him, it would be a good defense against his assignee, the plaintiff, since the mortgage note was not negotiable under the law of this state at the time of the transactions here involved. The result, so far as the defendant Pendergrast is concerned, is that upon the facts found by the lower court the plaintiff is entitled to a judgment against her

foreclosing any interest of hers in the mortgaged property, but not to a deficiency judgment. As to the defendant Waldteufel, he warranted to the plaintiff the validity of the mortgage against the defense interposed in this case (Civ. Code, sec. 1774), and is estopped from making such defense.

The application for a hearing is denied.

All the Justices concurred.