[Civ. No. 6500. Second Appellate District, Division One.—May 18, 1931.]

GEO. E. BLACK, Respondent, v. SOLANO CO. (a Corporation) et al., Appellants.

Bauer, Wright & Macdonald, Albert W. Leeds and Robert H. Edwards, Jr., for Appellant Solano Co.

Hibbard & Kleindienst for Appellant Camp Oil Co.

Olney S. Black and George E. Black for Respondent.

BISHOP, J., *pro tem.*—Plaintiff recovered judgment against the two appealing defendants based on his claim that he had an overriding royalty interest in the oil which each of the defendants bought. Defendants and plaintiff trace their respective rights to the oil back to a common source, but by different channels. The judgment against the defendant Solano Company is erroneous if it did not have constructive notice of the agreement whereby plaintiff acquired his interests. Judgment against both defendants is in error if the instrument on which plaintiff bases his claim was issued in violation of the Corporate Securities Act.

From the findings of fact made by the court and from admissions in the pleadings these events appear. In November, 1925, Messrs. Craig and Wilbur and Mrs. McAlpine were in possession of certain property on which they were engaged in drilling a well under an oil and gas lease. November 17th these lessees, as we shall hereafter name them, executed an instrument by the terms of which they sold to the plaintiff five per cent of all oil and gas produced. A more exact reference to the terms of this agreement will be made when we come to consider their import. Later the lessees entered into an oil purchase contract with the Pacific Gasoline Company, into whose shoes the defendants each in turn subsequently stepped, by which the gasoline company bought all but a portion of the oil to be produced, that sold including the oil in which plaintiff had an interest. By the terms of this oil purchase contract the money due the seller (lessees) was to be paid to the California Trust Company. Payments were so made up to

and including March, 1927, plaintiff receiving that to which he was entitled through the trust company under instructions from the lessees. From March, 1927, until the end of January, 1928, defendant Solano Company continued to take the oil, but made payments to others than the trust company, and plaintiff thus failed to receive his share, amounting to $730.26. Since January, 1928, defendant Camp Oil Co., Inc., has taken the oil, plaintiff not receiving the $31.51 which represents his interest.

Two major defenses were interposed to plaintiff's claim. The defendant Solano Company alleged that it had no notice whatever of any interest plaintiff had in the oil it was purchasing prior to the middle of January, 1928. Payments made subsequent to March, 1927, were made to the sheriff and to others apparently entitled to moneys due the lessees. Both defendants contend that the transfer of the five per cent overriding royalty to the plaintiff was void because made without compliance with the Corporate Securities Act. The trial court took the position that the defendant Solano Company had constructive notice of plaintiff's interest because the instrument by which it was conveyed was recorded, and that the interest sold to plaintiff was at a private sale, and was therefore not such a sale as is prohibited by the Corporate Securities Act. Under these theories, if correct, no findings were necessary (and none were made) touching either upon the lack of actual notice of the interest of the plaintiff, or upon the lack of a permit for the transfer of the five per cent interest to plaintiff. If these theories were wrong, and we find them so to be, then the court erred in not making findings on these matters interposed in defense, for there is evidence tending to sustain them, and if established they constitute valid defenses.

There should be no difference of opinion respecting the principle that unless the instrument on which plaintiff relies is one by which an estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title or possession of real property may be affected, its recordation does not result in giving constructive notice either of its existence or of its terms. (Civ. Code, secs. 1158, 1213, 1215; *Mesick* v. *Sunderland,* (1856) 6 Cal. 298; *Hager* v. *Spect,* (1878) 52 Cal. 579, 585; *Scott* v. *Sierra*

174

*Lumber Co.*, (1885) 67 Cal. 71 [7 Pac. 131]; *Hale* v. *Pendergrast*, (1919) 42 Cal. App. 104 [183 Pac. 833]; *Washoe County Bank* v. *Campbell*, (1918) 41 Nev. 153 [167 Pac. 643].) The instrument in question has no such effect. Its pertinent terms are these, the plaintiff being the party of the second part:

"That Whereas, first parties are the owners and holders of certain oil and gas royalties in an oil well to be drilled on certain real property in the county of Los Angeles, State of California, described as: . . .

"Now, in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations passing from second parties to first parties, the receipt of which is hereby acknowledged, first parties do hereby sell, assign, transfer and grant to second party five per cent (5%) of any and all oil, petroleum, gas and/or other hydrocarbon substances produced, sold and saved from the real property above described as the demised premises under said lease, which said five per cent (5%) of gross productions shall be and constitute a royalty interest in the assignee, George E. Black, free and clear of and from any operating or developing expenses whatsoever, and which royalty production as above mentioned shall be paid to said assignee by the purchasing Companies as and when due at the same time and in the same manner as the royalty is paid to the land owners.

"It is hereby understood and agreed that the party of the second part shall receive his royalties in moneys and not in kind and at the Standard Oil Market price of oil at the well."

The terms of the instruments by which the lessees deraign their title are not in evidence, but counsel concede that their rights are in substance those enjoyed under the ordinary oil lease, and the case was tried on this theory. Under the ordinary lease, the title to the oil at the time the plaintiff and the defendant each acquired the respective rights here involved, was in the owner of the land, not in the lessees. They, it is true, had an estate for years in the land, with the right to go upon it and prospect for and extract the oil. Until found and severed from the realty it was not theirs and did not become theirs until brought to the surface, when it became personal property.

(*Graciosa Oil Co.* v. *Santa Barbara*, (1909) 155 Cal. 140 [20 L. R. A. (N. S.) 211, 99 Pac. 483]; *Brookshire Oil Co.* v. *Casmalia etc. Co.*, (1909) 156 Cal. 211 [103 Pac. 927]; *Taylor* v. *Hamilton*, (1924) 194 Cal. 768, 774 [230 Pac. 656].) The oil was, however, potential personal property and so the subject of a sale (as distinguished from an executory contract to sell). "In such case, the sale is absolute and perfect when made vesting the property in the purchaser the moment it comes into existence." (*Merrill* v. *California Petroleum Corp.*, (1930) 105 Cal. App. 737 [288 Pac. 721, 723]. See, also, *Hamilton* v. *Klinke*, (1919) 42 Cal. App. 426 [183 Pac. 765]; *Sun-Maid Raisin Growers* v. *Jones*, (1929) 96 Cal. App. 650 [274 Pac. 557].)

In view of these principles, it is necessary to conclude that there was nothing more than a present sale of potential personal property accomplished by the transfer on which plaintiff relies. That which is the subject of the deal is "five per cent (5%) of any and all oil . . . produced, sold and saved". There is here no hint of any attempt to pass title to the oil while it was a part of the realty, that is, before it was "produced, sold and saved". Nor is there a suggestion of a transfer to plaintiff of any right to go upon the land for any purpose. There was not created here any estate or interest in real property, nor was the title or possession of real property affected. There is a line of reasoning employed in the recent case of *Richfield Oil Co.* v. *Hercules Gasoline Co.*, (1931) (Cal. App.) [297 Pac. 73], which further supports this conclusion. The agreement there under review was an executory contract for the sale and purchase of oil between the plaintiff and the owner of the land. The question presented was, did the contract create an interest in real property? Plaintiff contended that it had an interest in the land because the agreement established a *"profit à prendre"*. In disagreeing with this position, the court said: "This contract confers no right upon the plaintiff to enter the premises and develop oil or to sever the oil from the realty. It is a plain executory contract for the sale of personal property if and when that property should come into the possession of the vendor. The exclusive right to develop and produce the oil is left with the vendor. He retains exclusive possession and title of and to the realty, and hence of the oil in the ground until

the oil is severed and delivered to the tanks maintained by him on his own premises." (See, also *Bartholomae Oil Co.* v. *Delaney*, (1931) 112 Cal. App. 314 [296 Pac. 690].)

We conclude, therefore, that the recordation of plaintiff's agreement did not give defendants constructive notice of its existence or terms. Nor do we see any sound ground upon which plaintiff can base its contention that defendant Solano Company should have inquired from this one and that until it discovered that plaintiff had an interest in the oil. The ease with which an act may be done does not measure the duty to do it. ■ Under his agreement, plaintiff made the lessees his agent to sell the oil produced, for he was to be paid in money, not kind. They had possession. But for the provision in the agreement that the money was to be paid by the purchasing company to plaintiff, his agent would have had authority to collect. (Civ. Code, sec. 2325.) The lessees were at least the ostensible agents of the plaintiff, authorized to make the collection. Defendant's payment to the lessee under the circumstances is payment to the plaintiff. (*F. Medart Mfg. Co.* v. *Weary & Alford Co.*, (1917) 33 Cal. App. 347 [165 Pac. 35].)

■ With respect to the defense that plaintiff has no possible basis for a cause of action in his agreement with the lessees because that agreement was stamped at birth with a curse from the Corporate Securities Act, we find the governing principle thoroughly established. If plaintiff bought a security, within the meaning of the act, and it was issued without a permit, if required by the act, the eyes of the law see it as a blank piece of paper, giving plaintiff no right to any oil. Section 12 of the act states it to be void, and a long line of cases so hold, a late recognition of the rule appearing in *Pollak* v. *Staunton*, (1930) 210 Cal. 656, 293 Pac. 26. The provisions of the act (Stats. 1917, p. 673, amended Stats. 1925, p. 962) governing whether lessees were acting as individuals or as a copartnership, are these: "Sec. 3. No company shall sell . . . any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." Among some other definitions of "security" we find this one in subdivision 7 (b) of section 2: "Any instrument offered to the public by a 'company' evidencing or

representing any right to participate or share in oil, gas or other hydrocarbon substances or other minerals of any sort, as yet undeveloped, or in the proceeds of sale thereof.'' The word ''company'' is defined in subdivision 3 of section 2 to include ''partnerships, of every kind, . . . and also individuals as hereinafter defined''. Turning ''hereinafter'' we discover in subdivision 6, section 2: ''The word 'individual' in so far as it is included in the definition of a 'company' includes only persons selling . . . any security as hereinafter defined in subdivision eight of this section, of their own issue.'' The pertinent portion of subdivision eight reads: ''The word 'security', in so far as it applies to 'individuals', includes: (a) Any instrument offered to the public by an 'individual' evidencing or representing any right to participate or share in oil, gas or other hydrocarbon substances or other minerals of any sort, as yet undeveloped, or in the proceeds of sale thereof.''

A moment's study of these provisions and their application to the facts before us serves to eliminate most of the questions that suggest themselves. We need not determine whether plaintiff is right in his contention that the lessees were acting as individuals, or whether defendants' position is correct and they appear as copartners. With respect to the problem, did they sell a security for which they should have had a permit? The answer of the act is the same in either case. It is ''Yes, if they offered the public the chance to share in oil, as yet undeveloped, which they sold plaintiff.'' The evidence stands uncontradicted that when plaintiff acquired his interest, the well was being drilled and had not been brought in. The oil was yet undeveloped. There can be no question that a share in this undeveloped oil was what lessees sold plaintiff. The instrument plaintiff received was, as to lessees, ''their own issue''. The evidence is direct and unassailed that they had no permit. It follows that the sale to plaintiff was void because contrary to the express prohibition of the statute if that which plaintiff received was ''offered to the public''.

There is no finding on the issue created by the code's denial (Code Civ. Proc., sec. 462) of the allegation in defendant Camp Oil Company's answer that the assignment to plaintiff was one of several all offered for sale to the public. The finding that the interest was sold at a pri-

vate sale is beside the point. It is the offering and not the sale which must be to the public. If there was evidence which would support such a finding (the burden being on the defendant, *Bryan* v. *Banks,* (1929) 98 Cal. App. 748, 755 [277 Pac. 1075]), it was error to fail to make it. The evidence is slim, but substantial enough to warrant a finding. We note it in proof of sales of like interests, to other parties, which, under all the circumstances, would have warranted the court in drawing an inference that the lessees were offering to any of the public interested a chance to share in what oil might be developed in exchange for the money with which to make the development. (See *People* v. *Leach,* (1930) 106 Cal. App. 442 [290 Pac. 131, 135]; *People* v. *McCalla,* (1923) 63 Cal. App. 783, 789 [220 Pac. 436].) The court erred, moreover, in striking from the files proof of twenty of these assignments, but the two which were retained are sufficient to support our conclusion that a finding should have been made.

There is a further matter requiring discussion. Plaintiff sued, as already noted, on the strength of his agreement with lessees. His proof developed that long before the oil was produced for which he sues, he had assigned half his total interest to Lolita Barker and half to H. S. Robbins. March 1, 1928, a month after defendant Camp Oil Company began to receive the oil, Mrs. Barker reassigned her two and one-half per cent interest, together with her right to recover for deliveries previously made and unpaid for; Robbins reassigned at an earlier date his right to recover for the runs already taken and for those to come. Plainly, when we consider the possibilities of defense that could be made against these causes of action, which were not available to that presented in the complaint, we must conclude that there is not only a variance between allegation and proof, but that it is as to a material matter. We refer to this situation for the guidance of the court and parties on a new trial.

This action is not a proper one in which to determine the disposition to be made of the small sum retained by defendant Solano Company, as it appears that others, not parties hereto, have succeeded to the interest of the lessees, and they are necessary parties in an action where the disposition of that *res* is to be determined.

The judgment against the Camp Oil Company is reversed, and the cause remanded for a new trial. ■ As respects the Solano Company, the record is such that it warrants an appellate court in supplying an omitted finding pursuant to section 956a of the Code of Civil Procedure, as interpreted in *Tupman* v. *Haberkern*, (1929) 208 Cal. 256 [280 Pac. 970], and *Hanchett* v. *Wiseley*, (1930) 107 Cal. App. 230 [290 Pac. 311]. Plaintiff, as a witness, admitted that he gave the Solano Company no notice of his interest until the middle of January, 1928, and the evidence on defendant's part is positive that it had no knowledge prior to January that plaintiff claimed any interest. Had the trial court not neglected to find on this question, it must have found that defendant Solano Company had no notice. On a new trial it is apparent that that would be the finding. We therefore make the following orders: (a) That to finding II, the following statement be added: "That at no time prior to January, 1928, did defendant Solano Company have notice or knowledge of said instrument or that the plaintiff claimed any rights thereunder." (b) That the trial court strike from the findings the statement reading: "Wherefore, plaintiff is entitled to recover from said defendant Solano Company, the sum of Seven Hundred Thirty and 26/100 Dollars ($730.26) and is entitled to judgment accordingly," and insert in lieu thereof the following: "Wherefore, defendant Solano Company is entitled to judgment that plaintiff take nothing, and for its costs." (c) That the judgment against the Solano Company be reversed, and the trial court be instructed to render judgment in accordance with the conclusion of law set forth in order (b) just made.

Conrey, P. J., concurred.

Houser, J., concurred in the judgment.