**In re STERLING.***

**BERNSTEIN et al. v. LAUGHARN.**
**No. 8666.**

Circuit Court of Appeals, Ninth Circuit.
April 30, 1938.

Roland G. Swaffield and Thomas F. McCarry, both of Los Angeles, Cal., for Bernstein and others.

Joseph Rifkind and Raphael Dechter, both of Los Angeles, Cal., for Laugharn, trustee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

There are presented in this case an appeal and cross-appeal from an order of the District Court disallowing a claim filed in bankruptcy proceedings. Appellee and cross-appellant Laugharn is the trustee in bankruptcy of one Jack Dave Sterling and of numerous oil companies, of each of which Sterling was the general man-

*Rehearing denied 97 F.2d 505.

ager and sole stockholder. At the approximate time that Sterling was adjudicated bankrupt each of his companies was likewise adjudicated. Because the funds of each company and the funds of Sterling were so inextricably intermingled at the date of adjudication, the proceedings of all were consolidated. We are not concerned here with the propriety of such treatment of the corporations, Sterling, and the creditors.

Claimants against the commingled assets of Sterling and his companies were divided by the District Court into two general classes. The first of these comprised general creditors, and the second a number of holders of fractional interests or "percents" in petroleum products garnered from one or another of the various wells owned by Sterling's companies. The claim in issue here is of the latter class.

One of Sterling's companies was the Lion Petroleum Corporation, a California corporation. This company owned a well known as "Lion Petroleum No. 1." Among those claiming to hold per cent. interests in this well was the appellant Sam Bernstein.

Bernstein and his assignee, the appellant Larry Company, a corporation (appellants are hereinafter denominated "Bernstein"), asserted a right to participate in the bankrupt's assets in the status of a holder of ten $1,000 percentage interests in the produce of Lion Petroleum No. 1. The claim was based on the purchase by Bernstein in 1935 of ten such per cent. interests for a cash consideration of $10,000.

The trustee disallowed the claim on the ground that the issuance of the ten per cents. to Bernstein was void for failure to comply with the provisions of the California Corporate Securities Act, St.1917, p. 673, as amended. The trustee's disallowance was based on the undisputed fact that Lion Petroleum Corporation had secured from the California Corporation Commissioner a permit to sell such fractional interests at $1,000 a per cent.; and on the further contention that Bernstein had in fact paid only $600 a per cent., or, in all, $6,000 for the ten per cents.

The referee ruled in accordance with the trustee's contention and held that the sale to Bernstein was void under section 16 of the act, St.1917, p. 681, as amended by St.1933, p. 2316, Cal.Gen.Laws 1933, Act 3814, p. 1773, which provides that:

"Every security * * * issued in nonconformity with the provisions * * * contained in the permit * *. * shall be void."

The referee ruled further that the appellant Bernstein was a knowing party to the sale of the per cents. in violation of the terms of the permit, and hence was a party in pari delicto to the violation of the Corporate Securities Act. So ruling, he held that Bernstein was not entitled to participate in the assets in the status of a percentage holder.

The District Court held in accordance with the referee that the transaction by which Bernstein acquired his interest was in violation of the statute, but overruled the referee's holding that he was in pari delicto with the seller. The court then ruled that Bernstein was not entitled to the status of a percentage holder, but was entitled to claim a refund of the $6,000 he had paid for his interest, and hence was permitted to claim as a creditor for that amount.

The purchaser Bernstein appeals from the order disallowing his claim to the ten per cents. The trustee cross-appeals from the allowance of the $6,000 rescission claim.

We are of the opinion that there was no violation of the statute so far as Bernstein's purchase of ten per cents. was concerned, and that he is entitled to participate in the assets in the status of owner of the ten fractional interests.

The evidence is undisputed that Sterling was the general manager of the Lion Company and that he delivered the company's assignment of the per cents. to Bernstein, and Bernstein gave the general manager a valid $10,000 check for them. The Lion Company through its general manager was thus paid the full consideration required by the permit. There is no finding by the trustee that the company was not so paid.

In this situation, the per cents. legally became the property of Bernstein. His ownership can be defeated only by an affirmative showing by the trustee on behalf of the creditors that there was some wrongdoing on Bernstein's part toward the Lion Company which so infected the transaction that it may be declared void.

On such an issue of infecting fraud, the burden of proof is on the attacking party. Kress v. Tooker-Jordan Corpora-

618

tion, 103 Cal.App. 275, 281, 284 P. 685; Bryan v. Banks, 98 Cal.App. 748, 755, 277 P. 1075; Black v. Solano Co., 114 Cal. App. 170, 178, 299 P. 843. As these cases hold, the situation is one in which are necessarily applicable the presumptions expressed in the California Code of Civil Procedure, § 1963, subsec. 19, that private transactions have been fair and regular, and subsection 33 that in them the law has been obeyed.

If, whenever the holder of a security were challenged as to his right to hold it, the challenge placed upon the holder the burden of proof that the corporation had committed no wrong in issuing it to him, the whole scheme of financing by security issue would be shattered. If the corporate records were destroyed or stolen, the holder of the security would be unable to maintain such a burden of proof and would lose it, although the party merely challenging it proved nothing at all.

■ The trustee's allegations in his affirmative case against Bernstein are nowhere stated in the record. From the opinion and findings of the referee, the most favorable statement of the case sought to be proved by the trustee was: (1) That the Lion Company was not in fact paid $10,000 for the per cents., because Bernstein simultaneously received, not from the Lion Company, but from Sterling's personal funds, Sterling's check for $4,000; (2) that Bernstein was in pari delicto with Sterling in the latter's deposit of the $10,000 check received as general manager of the Lion Company in his own account instead of that of his company, and hence is to be regarded as having paid the company nothing for the per cents.

(1) On the first issue the facts are clear. Bernstein, in his first negotiations for the purchase of a percentage interest in the Lion Well No. 1, treated the transaction as if it were personally owned by Sterling. Bernstein finally negotiated the price down to $600 a per cent. However, when the transaction reached the closing point, Sterling advised Bernstein that he was buying the per cents. not from him, but from the corporation, and that the corporation was required by the terms of the permit to sell the per cents. at not less than $1,000 a per cent. Sterling agreed that the corporation should receive $10,000 for ten of the per cents., of which $10,000 he would contribute, from his per-

sonal funds, $4,000, and Bernstein the other $6,000.

It is obvious that a sole stockholder would lose nothing by paying $4,000 towards the corporate assets, thus increasing by $4,000 the value of the stock—all of which he held. So far as the permit is concerned, the consideration received by the corporation for the sale of its per cent. interest would comply with its terms. So long as the corporation receives the $10,000, it is a matter of indifference whether Bernstein or his mother-in-law or Sterling paid the consideration for the sale of the per cent. interests.

The transaction accomplishing this result was carried out by Bernstein giving a check for $10,000, payable to the Lion Petroleum Company, and Sterling, simultaneously, giving to Bernstein $4,000 from his personal funds.

We hold on this issue that the trustee not only has not sustained his burden of proof, but we find affirmatively that these facts show a full payment to the corporation.

■ (2) The trustee has not maintained his burden of proof that Bernstein was in pari delicto with Sterling regarding Sterling's treatment of the check payable to the Lion Company. Sterling, the general manager, indorsed the check and, the referee finds, placed it to his own account. Later, Sterling caused $10,000 to be paid to the Lion Company from another company of which he was the sole stockholder. There was no evidence that Sterling did not have a credit with this other company warranting its payment of the $10,000 to the Lion Company, and hence no evidence that it was a wrongful act. It is a case where the California presumption of rightful business dealing applies.

■ However, if Sterling did commit some wrong toward the Lion Company regarding the payment for the per cents., there is no evidence that Bernstein knew of it or was charged with any obligation to follow the $10,000 check after he had delivered it to the Lion Company's general manager. There is no evidence that Bernstein knew anything about Sterling's other companies, or even that he had any, much less that he intercommingled their funds or committed any illegal act in their management.

■ All the evidence shows Bernstein knew is that Sterling was the sole stock-

holder of the Lion Company. Single ownership of all of a corporation's stock is entirely legitimate. Knowledge of it in one dealing with such a corporation suggests no suspicion which requires further investigation. If it did, every one knowingly selling anything to or buying anything from such a corporation would be in terrorem as to his credit for his sale or his title to the property purchased.

We agree with the conclusion of the District Court that Bernstein is not in pari delicto with any of Sterling's allegedly improper dealings, if any, with the Lion Company in the matter of the issue of and payment for the per cents.

We do not agree with the suggestion, made without citing any evidence to support it, that in thus upholding the District Court's decision in favor of Bernstein, on the issue of conspiracy raised by the trustee's appeal, we or the District Court have "rationalized" Bernstein's conduct. It is not true that the evidence shows he "had no reason to believe that the $4,000 rebate which he received would come from any source other than the general jackpot into which his $10,000 check went."

Such a suggestion is based on an inversion of the burden of proof. There is no evidence that Bernstein knew of any "jackpot," if that means anything more than that Sterling was sole stockholder of the Lion Company which had one bank account while Sterling had another. The evidence is undisputed that the $4,000 check came from Sterling's private funds and not from the company's.

We are all agreed that Sterling did pay the $10,000 to the Lion Company, thus negativing any conspiracy not to do so. The record gives no evidence of such a conspiracy. The trustee's appeal makes it necessary to decide the conspiracy charge against Bernstein and, as did the District Court, we find him affirmatively shown to be innocent.

▇ However, we cannot agree with the lower court's decision that here is a case for the application of the doctrine that one not in pari delicto must rescind and have a claim for the price paid, which claim here would have to be considered in connection with the other claims of the bankrupt. Since the per cents. were not issued in violation of the permit, the title acquired by Bernstein to the per cents. was valid. Hence, he cannot be deprived of his security and compelled to take the position of a creditor claimant against the bankrupt estate for the amount of the consideration he paid for it.

The order below is reversed, and the District Court is ordered to enter an order that appellants Bernstein and Larry Company are entitled to their respective per cent. interests and to participate in the assets in that status. The cross-appeal of the trustee is dismissed.

HEALY, Circuit Judge (concurring).

The record discloses that on August 12, 1935, some two weeks after the sale to Bernstein, Sterling transferred the sum of $10,000 to the Lion Petroleum Corporation on account of the sale of the Bernstein per cents. The transfer was made from the Huntington Investment Company, one of Sterling's numerous corporations. While the transaction may have been at the expense of parties interested in the Huntington Investment Company, there is no evidence to that effect, and no complaint is being made on that score.

It thus appears, without contradiction, that the Lion Petroleum Corporation actually received the full amount required by the permit to be paid for the Bernstein per cents. This being true, the questionable character of Bernstein's conduct becomes immaterial. However, there is no occasion for this court's undertaking to rationalize his behavior. He knew the requirements of the permit; and he had no reason to believe that the $4,000 rebate which he received would come from any source other than the general jackpot into which his $10,000 check went. So far as he was concerned, he manifested an entire willingness to participate in a fictitious transaction calculated to deceive.

Since the corporation ultimately received the amount required to be paid for Bernstein's per cents., I concur in the conclusion of the majority that the title acquired by Bernstein was valid, and that he is entitled to participate as an owner of the per cents.