[S. F. No. 923.   Department One.—February 18, 1899.]

ERNEST E. HALL, Respondent, v. ALBERT W. GLASS et al., Appellants.

CHATTEL MORTGAGE UPON CROPS TO BE GROWN—POTENTIAL EXISTENCE.—
A chattel mortgage, duly executed and filed as such, which expressly covers all crops to be grown upon two parcels of land particularly described, during the continuance of the mortgage, is good, in any event, to the extent of crops planted during the life of the note secured by the mortgage. The potential existence of the unplanted crop of a subsequent year is sufficient to sustain the lien of the mortgage, as against subsequent purchasers or proceedings of any kind.

ID.—INSOLVENCY—HOMESTEAD.—The commencement of proceedings in insolvency by the mortgagor does not affect the lien of the mortgage upon the crop to be planted during the year of his discharge, nor can the filing of a declaration of homestead upon the premises before the planting of the crop, and the subsequent setting apart of it to the insolvent mortgagor, affect the lien of the mortgage upon the crop of that year.

ID.—FORECLOSURE—SALE OF CROP BY RECEIVER.—Upon foreclosure of the chattel mortgage, a receiver may be appointed to take posses-

sion of and sell the crop planted during the year in which the mortgagor was discharged in insolvency, and had the homestead set apart to him.

ID.—LIMITATION UPON LIEN FOR FUTURE ADVANCES.—A chattel mortgage to secure future advances is not unlimited in its duration. After notice of subsequent sale or incumbrance made by the mortgagor, any further advance is equivalent to a new mortgage, the lien of which is subject to such subsequent sale or incumbrance.

ID.—CONTINUING SERVICES OF MORTGAGOR—COVENANT FOR POSSESSION.— It cannot be successfully objected that the lien of the mortgage is defeated by a provision for the continuing services of the mortgagor, after his discharge in insolvency, if the mortgage expressly stipulates that, in default of the rendition of the service by the mortgagor, the mortgagee may take possession of the crops and harvest them.

ID.—ANSWER OF WIFE IN FORECLOSURE—DECLARATION OF HOMESTEAD— FINDINGS—IMMATERIAL OMISSION.—Where the wife of the mortgagor answered in the foreclosure suit as his wife, declaring herself to be such, and pleaded a declaration of homestead filed by her upon her husband's property, and the court found that she had declared such homestead, the mere failure to find specifically that she was the wife of the defendant mortgagor is not prejudicial.

ID.—DECREE OF FORECLOSURE—ORDER FOR PAYMENT OF MONEYS—EX- HAUSTING JURISDICTION.—Where the decree provided for the payment to the mortgagor of the moneys received from sales of the crops of two years by receivers, a clause in the decree barring and foreclosing any right of redemption should be referred to the sales of the crops; and where no right to further proceedings is reserved in the decree, the jurisdiction is exhausted, and the foreclosure clause is not prejudicial.

APPEAL from a judgment of the Superior Court of Contra Costa County. Joseph P. Jones, Judge.

The facts are stated in the opinion.

W. S. Tinning, for Appellants.

Snook & Church, for Respondent.

PRINGLE, C.—Appeal from judgment; with bill of exceptions. Action brought to foreclose a chattel mortgage upon crops growing and to be grown. Mortgage made to secure the payment of a note for fifteen hundred and fifty dollars, bearing date January 24, 1895, payable one day after date, and also

such other sums as the mortgagee might advance to the mortgagor during the continuance of the mortgage, provided that such advances shall be at the exclusive discretion and option of the mortgagee. The mortgage covers "all the crop and products of whatever nature which are now standing, or growing, or which shall or may hereafter at any time be sown, planted, cut, or harvested by the said party of the first part during the continuance of this mortgage, on the following described lands and premises, and every part and portion thereof, to wit." Now follows description of two parcels of land, one owned by the mortgagor, A. W. Glass, and known as the "Glass ranch," and the other held by him under lease. "This mortgage is intended to cover all the land farmed by the said A. W. Glass." The mortgagor covenants that "he will carefully tend, take care of, and protect the said crop while growing and until fit for harvesting, and then faithfully and without delay harvest, thresh, clean, and sack all the grain of every description raised upon said premises, and bale all the hay raised thereon in bales of approved and merchantable sizes, and put all·the other products raised upon said premises in shape for market, and immediately deliver all said products into the possession of the party of the second part in the town of Pleasanton," et cetera.

A. W. Glass, the mortgagor, filed his petition in insolvency on October 23, 1895, and was discharged from his debts on March 11, 1896.

"Prior to the filing of the petition in insolvency, but subsequent to the making of note and mortgage," L. B. Glass made a declaration of homestead upon the "Glass ranch," and the same was set apart as homestead by the insolvency court by order of December 7, 1895. A. W. Glass has always continued in possession of the "Glass ranch."

In the foreclosure proceedings a receiver was appointed to take possession and manage the crops of the year 1895. And another receiver was appointed to take possession and manage the crops of 1896.

A decree was entered in favor of the plaintiff, directing the receivers to apply the proceeds of the crops of those two years in their hands toward the payment of the amount found due to plaintiff. No other relief is granted. Appeal from the

judgment is taken by A. W. Glass and L. B. Glass, who answered, as the wife of A. W. Glass. The defendant Veale, sued as sheriff of Contra Costa county, and appointed assignee in insolvency of A. W. Glass, does not appeal.

There is no contest over the proceeds of the crop of the year 1895. The contention of the appellants is that the mortgage is not a lien upon the crop of 1896.

The first point made by the appellants is that the crops to be grown after 1895 are not designated with sufficient certainty to create a lien thereon, against the homestead right of the appellants or the insolvency of A. W. Glass. There is no serious contention that a chattel mortgage cannot cover crops unplanted. That point was directly decided in *Arques v. Wasson*, 51 Cal. 620; 21 Am. Rep. 718. The contention is, that the subject of the mortgage must be clearly defined, and that this mortgage does not define them with sufficient certainty, there being no defined limit to the continuance of the mortgage, during which the lien is to continue. In support of this position counsel cite several cases from Iowa and one from Nebraska. The leading case in Iowa is *Pennington v. Jones*, 57 Iowa, 37. The mortgage covered sundry acres of grain of different kinds, "to be sown and raised on the land leased of Barber McDowell and now occupied by said W. A. McDowell (the mortgagor), lying and being in section 17," et cetera. The court held the mortgage invalid, because it did not state "that all the crops to be grown for any specified number of years were mortgaged," saying that "before a mortgage on crops to be sown or planted can be regarded as valid, as against third persons, the year or term the crops are to be grown must be stated."

In *Muir v. Blake*, 57 Iowa, 662, the mortgage said, "all the crops raised by me in any part of Jones county for the term of three years." The court held that this was a "roving description, with nothing in the way of identification to suggest inquiry where the crops may be found, except the body of the county."

In *Eggert v. White*, 59 Iowa, 464, "all and the entire crop of flax and wheat and other grain or produce raised on the east half of . . . ." Held invalid, "because the year the same was to be grown is not stated."

In *Cole v. Kerr*, 19 Neb. 553, "seventy-five acres of corn to be planted, fifty acres of broom corn to be planted, tended and delivered in June," et cetera. Held that "to be planted" would apply to all corn "which might thereafter be found in Adams county."

In all of these cases there are elements of uncertainty, either in the place or time of the planting. In the present case the description of the premises is specific. The alleged element of uncertainty is the term "during the continuance of the mortgage." The appellants contend that the provision in the mortgage, that it is intended to secure any future advances which mortgagee may make to mortgagor, introduces an element of uncertainty in this, that by such advances the mortgage may be kept alive indefinitely beyond the statutory time of the note.

There is, however, under our decisions, a limit to the continuance of a mortgage as against subsequent purchasers or encumbrancers. In a line of cases in this court, beginning with *Lord v. Morris*, 18 Cal. 482, it has been well settled that subsequent purchasers or encumbrancers may rely upon the apparent expiration of the mortgage, and will hold against a prior mortgage in spite of an extension or renewal of the debt beyond its statutory life.

By the same reasoning subsequent advances, although contracted for by the mortgagor, cannot extend the apparent maturity of the mortgage against subsequent purchasers. This rule, in reference to future advances, as laid down in the cases, is a limit to the life of a mortgage. It is said in *Tapia v. Demartini*, 77 Cal. 387, 11 Am. St. Rep. 288, that where a mortgage is given to secure future advances the mortgagee cannot safely makes such advances where he has actual notice of a sale or encumbrance made by the mortgagor. And in Jones on Chattel Mortgages, third edition, section 97, it is said: "The general rule is, that a prior mortgagee is affected only by actual notice of a subsequent encumbrance, and not by constructive notice, but there are numerous authorities which hold that if the mortgagee has the option to make the advances or not, as he chooses, the mortgage, as to each advance made upon it, is to be regarded as a fresh mortgage, and is subject to the lien of any encumbrance which has been duly recorded at the time

the advance is made, whether the mortgagee has actual notice of it or not."

In view of these authorities, the term "during the continuance of this mortgage" has a defined meaning. It cannot be said, as claimed by the appellants, that the mortgage could be continued *ad infinitum*.

In any event, the mortgage is good to the extent of the crops planted during the life of the note. The uncertainty of description insisted upon by appellants is in the doubtful period beyond the life of the note. There can be no question that the mortgage may be good to the extent of what is certain and definite, even if it be bad for the rest. In one of the cases cited by the appellants (*Luce v. Moorehead,* 73 Iowa, 499, 5 Am. St. Rep. 695), it was said: "An instrument may be valid as to the property sufficiently described, and void for the uncertainty of the description of other property." This view of the present case is sufficient to sustain the ruling of the court below, which extends only to the crops of the first two years.

Another contention of the appellants is, that the proceedings in insolvency having been instituted in 1895, there was then no lien upon the crops of 1896 which were then unplanted, and, the debt being discharged by the insolvency, there was no debt to sustain any lien to arise thereafter when the crop began to have an existence. They cite the case of *Mayer v. Taylor,* 69 Ala. 403, 44 Am. Rep. 522, to the effect that the lien actually attaches only when the property comes into existence. But the case recognizes the equitable lien attaching to the potential existence, by virtue of which the mortgage of an unplanted crop is valid. The case holds that this equitable mortgage was superior to a subsequent mortgage made after the crop was planted. And our case of *Arques v. Wasson, supra,* rests upon the same ground—that there is in such cases a potential existence which sustains the lien of the mortgage. After this lien is created insolvency proceedings cannot affect the debt to the impairing of the lien. In *Arques v. Wasson, supra,* this lien prevailed against an attachment and execution. In *Mayer v. Taylor, supra,* it prevailed against a mortgage made after the crop was planted. Certainly, proceedings in insolvency have no stronger legal or equitable force than purchasers for valuable consideration.

But, say the appellants, this is a contract for continuing personal services. And they cite the case of *Mooney v. Detrick*, 85 Cal, 549, which holds that the debt due by one who engages the time and services of another is discharged by the insolvency. Conceding, without deciding, that the converse of this is sound— that a covenantor is released from his contract for service by insolvency, yet the personal services in this case are not the debt or of the essence of the debt. The covenant of this mortgage, that the mortgagor should tend, protect, and take care of the crop and deliver it to the mortgagee, is merely collateral to the real indebtedness and for the better enforcement of the lien. By virtue of the debt and the lien the mortgagee is entitled to hold all the crops grown and tended by the mortgagor; and the mortgagor covenants to tend and protect the crops and deliver them to the mortgagee. That his services in that respect are not the debt which the mortgage secures, nor of the essence of the debt, is made clear by the fact that provision is made in the mortgage that in case of his breach of this covenant the mortgagee might enter upon the premises and take all measures necessary for the protection of the crops and products, and expressly appointing the mortgagee the attorney of the mortgagor for that purpose. The covenants in that respect are very significant. "And the party of the first part does hereby covenant and agree to and with the said party of the second part, its successors and assigns, that he and they will carefully tend, take care of," et cetera. "That in default of any or either of the above acts to be done by the said party of the first part, the party of the second part, his successors or assigns, may enter into or upon the said premises and take all measures necessary for the protection of said crops or products or his interest therein, et cetera. . . . . And the said party of the first part does for the purpose aforesaid make, constitute, and appoint the said party of the second part, or his successors or assigns, his true and lawful attorney irrevocable, with full power to enter upon said premises and take possession of said crops, and take care of, protect, thresh, clean, and sack or bale the same in case of any default on the part of the covenants herein contained." It would be unreasonable to hold that a release of the mortgagor from these subsidiary services would destroy the lien which is so carefully guarded against any injury to arise from the absence of the subsidiary services.

And the case is stronger if possible against an insolvent who himself institutes proceedings to disqualify himself.

3. Substantially the same argument is urged by appellants in reference to the declaration of homestead made after the mortgage and before the crop of 1896 was planted.   But the argument has no greater force in favor of a homestead right than in favor of a sale for value, or proceeding in insolvency.   Establish the fact that there is sufficient potential existence in the coming crops to sustain a legal or equitable lien upon them, and the lien must prevail against subsequent purchasers of every kind; otherwise it is no lien at all.

The objection made in all the cases to the descriptions is that they are not sufficient to impart notice.   In one of the cases cited by appellants the certainty of description required is said to be "sufficient, if it be such as to enable third parties by inquiries, which the instrument itself indicates and directs, to identify the property covered by it."   (*Muir v. Blake,* 57 Iowa, 665.)   As the alleged element of uncertainty in this case was the continuance of the mortgage, the fact that it was in force in 1895 and 1896 was within the knowledge of one homestead claimant and easily ascertained by the other.

Appellants insist that there is error in not making a specific finding that L. B. Glass is the wife of A. W. Glass.   But her rights were protected; she was a party to the action; she answered as the wife, declaring herself to be his wife; it is found that she made a declaration of homestead upon his property; and she set up in her answer the homestead which she had declared upon the land of her husband.   Under these circumstances, the absence of a special finding has done her no harm.

Criticism is made of the form of the decree, the point of objection being that it contains the usual clause that the defendants and those claiming under them are barred and foreclosed of all equity of redemption in or claim to "the mortgaged property," but that no sale of property is ordered.   The operative words of the decree are that the moneys which have come into the hands of the receivers from the sales of the crops of 1895 and 1896 be applied toward the payment of the ascertained debt. These sales appear to have been made by the receivers under orders of court presumably correct, as no objection to them appears in the records.   The clause by which the defendants are

barred and foreclosed of any right of redemption "in the mortgaged property" cannot be appropriately applied to any future crops not sold or ordered to be sold, but may properly be referred to what have been sold by the receivers, and the proceeds of which are ordered to be applied toward the payment of the debt. The respondent in his points and authorities declares that he "is satisfied with the decree"; and, as there is nothing in the decree reserving any right to further proceedings in the action, the jurisdiction is exhausted, and the clause in question, if error, is not prejudicial.

I advise that the judgment be affirmed.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.     Garoutte, J., Harrison, J., Van Dyke, J.