[L. A. No. 12404. In Bank.—August 30, 1933.]

WESTERN OIL AND REFINING COMPANY, Plaintiff and Respondent, v. VENAGO OIL CORPORATION (a Corporation), Defendant and Respondent; STANDARD PIPE & SUPPLY CO. (a Corporation) et al., Appellants

734

Bailie, Turner & Lake and Wallace Collins for Appellants.

Arthur G. Baker for Plaintiff and Respondent.

W. L. Engelhardt, G. J. Oppegard and Mark F. Jones for Defendant and Respondent.

George W. Nilsson, as *Amicus Curiac* on Behalf of Appellants.

Hanna & Morton, as *Amici Curiae* on Behalf of Respondents.

SEAWELL, J.—Plaintiff Western Oil and Refining Company brought this action in interpleader to determine con-

flicting claims to money due and owing from it for crude oil purchased from defendant and respondent Venago Oil Corporation. Defendant Standard Pipe & Supply Co. and the defendants referred to herein as Campbell and associates have filed separate appeals from the judgment, which decreed that Venago Oil Corporation was entitled to the entire sum of $44,563.42 then due, and that appellants had no interest therein, or in any amounts which might thereafter become due from plaintiff in interpleader for future deliveries of crude oil under its existing contract with Venago Oil Corporation. Both appeals involve the same issues and may be disposed of in a single opinion.

The facts necessary to a decision of the appeals herein are in the main undisputed. In November, 1928, one F. M. Miller, by assignment, became the owner of an oil and gas lease covering property in the Signal Hill district, county of Los Angeles. In the months of December, 1928, and January and February, 1929, he sold for cash and materials percentage units, commonly designated royalty interests, in the oil, gas and other hydrocarbon substances to be "produced, saved and sold" under his lease. The appellants referred to herein as Campbell and associates are either purchasers of said units, or assignees of purchasers thereof. The funds derived from the sale of units were used by Miller in drilling a well on the property. Appellant Standard Pipe & Supply Co. furnished pipe used by Miller in developing said well, under a contract dated February 1, 1929, by which said company leased pipe to Miller for a specific term in consideration of a cash rental and in further consideration of the assignment to the supply company of two per cent of all oil, gas and other substances to be produced under Miller's lease. As security for payment of the cash rental, Miller assigned to the company ten per cent of the gas, oil and other substances to be produced. He had not procured a permit from the commissioner of corporations for the issue of royalty interests.

By March, 1929, the well had been drilled to a depth of over 4,500 feet, but had not produced oil, and Miller was having difficulty in financing further drilling operations. On March 13, 1929, Miller, his son, and a third person organized the Venago Oil Corporation under the laws of this state, and each subscribed to one qualifying share of

stock. On March 22, 1929, Miller transferred the oil lease to a third party, who was acting as a dummy in the transaction, and it was subsequently transferred to the Venago Oil Corporation. Sixteen days after formation of the corporation Miller and the other two incorporators resigned as officers and directors, and assigned their qualifying shares to three other persons, who have since continued to be officers and directors. No other shares of corporate stock have ever been issued.

The conclusion is inescapable that said three persons represent and are acting on behalf of the Du Cal Company, Inc., to which Miller was indebted for money loaned, and that it had been agreed at least as early as March 22d, if not prior to organization of the Venago Oil Corporation, that control should pass from Miller to the Du Cal Company, Inc. Miller, however, continued in charge as superintendent of the well. The Venago Corporation paid bills previously incurred by Miller. On August 15, 1929, the well was brought into production at 7,289 feet, and deliveries of crude oil were made to Western Oil and Refining Company under a contract of August 12, 1929, for purchase of the entire crude oil production from Venago Oil Corporation for a period of five years. The trial court by the judgment appealed from has decreed that appellants as holders of royalty interests issued by Miller have no interest in the proceeds of oil produced by Venago Oil Corporation after Miller had assigned his lease to said corporation.

Postponing our consideration of the effect of Miller's failure to procure a permit for issuance of royalty interests, and assuming that the units as issued by him were valid, we are of the view that respondent Venago Oil Corporation was bound to recognize them as outstanding interests in the oil produced by it. We cannot accede to the trial court's view that the instruments were merely personal undertakings of Miller to pay appellants percentages of the proceeds of oil produced by him individually. By the terms of the unit instruments Miller "assigns, transfers and conveys" stated percentages of all gross oil, gas and other hydrocarbon substances "produced, saved and sold *under the terms of a certain lease*", describing the lease held by him. The oil was produced under said lease notwithstanding Miller assigned it to the Venago Oil Corporation.

■ The Venago Oil Corporation is charged with full notice of the issuance of said royalty interests. Miller, his son, and a third person were the incorporators and first directors and officers of the corporation. Mark F. Jones acted as attorney for Miller and prepared an application to the commissioner of corporations, reciting the prior issuance of royalty interests sold by Miller. Jones was vice-president of the Du Cal. Co., Inc. As Miller and his associates resigned, Jones became a director, officer and general manager of the Venago Oil Corporation, and has continued in office at all times since. Furthermore, the instruments through which Venago Oil Corporation succeeded to the oil lease and the oil to be produced were all transfers of the assignor's right, title and interest. A transfer of right, title and interest vests in the purchaser only what the transferor could claim, and is subject to all defects and equities which could have been asserted against the transferor. (*O'Sullivan* v. *Griffith*, 153 Cal. 502, 505 [95 Pac. 873, 96 Pac. 323]; *Lombardi* v. *Sinanides*, 71 Cal. App. 276, 277 [235 Pac. 455].)

■ It is settled law that the lessee under an oil and gas lease acquires no title to the oil and gas in place as part of the realty, but only a right to enter upon the land, drill wells, and reduce the oil and gas to possession. When reduced to possession the oil and gas are personal property, and only then can absolute title vest in the lessee. (*Black* v. *Solano Co.*, 114 Cal. App. 170 [299 Pac. 843]; *Graciosa Oil Co.* v. *Santa Barbara County*, 155 Cal. 140 [99 Pac. 483, 20 L. R. A. (N. S.) 211]; *Brookshire Oil Co.* v. *Casmalia etc. Co.*, 156 Cal. 211 [103 Pac. 927]; *Taylor* v. *Hamilton*, 194 Cal. 768 [230 Pac. 656]; *Richfield Oil Co.* v. *Hercules Gasoline Co.*, 112 Cal. App. 431 [297 Pac. 73].) Appellants invoke the doctrine of potential possession of personal property as applied to sales and mortgages of future crops and unborn young of animals, which they contend is by analogy applicable to sales and mortgages of oil and gas to be produced under an existing lease. Under this doctrine the seller or mortgagor who holds an interest in land is deemed to have potential possession of unplanted and future crops to be grown thereon, and the owner of animals to have potential possession of unborn young, which it is held may be the subject of a *present* sale or mortgage as distinguished

from an executory contract to sell or mortgage. (*Arques* v. *Wasson*, 51 Cal. 620 [21 Am. Rep. 718]; *Lemon* v. *Wolff*, 121 Cal. 272 [53 Pac. 801]; *Hall* v. *Glass*, 123 Cal. 500 [56 Pac. 336, 69 Am. St. Rep. 77]; *Sun-Maid Raisin Growers* v. *Jones*, 96 Cal. App. 650 [274 Pac. 557]; *Merriman* v. *Martin*, 113 Cal. App. 167 [298 Pac. 95].) In the so-called present sale or mortgage of future goods such as crops, title to, or a lien on, the crop as personal property vests in the purchaser or mortgagee *eo instante* upon the crop being harvested and severed from the realty. Such title is paramount to the rights of those who claim an interest therein acquired between the date of the sale and the harvest, or thereafter.

The doctrine of potential possession has been recognized by the courts of this state as applicable to sales of oil and gas to be produced under an existing lease. (*Black* v. *Solano Co.*, 114 Cal. App. 170 [299 Pac. 843]; *Jones* v. *Pier*, 124 Cal. App. 444 [12 Pac. (2d) 646]; *Merrill* v. *California Petroleum Corp.*, 105 Cal. App. 737 [288 Pac. 721].) The operating lessee who has acquired the right by contract to enter upon land and prospect for oil and gas has potential possession of all oil and gas which may be produced during the continuance of the lease, and this is so notwithstanding the oil lease may provide for forfeiture in the event the lessee shall fail to drill a well within a designated time, or fail to discover oil. Leases of farm lands commonly provide for forfeiture for nonpayment of rent or other breaches of the lease, yet such provisions have never been thought to render the doctrine of potential possession inapplicable to crops grown while the lease is in full force and effect, and has not been forfeited or terminated. It follows that when, as in the instant case, the operating lessee has assigned percentages of the oil, gas and other substances to be produced, saved and sold *under his lease,* he cannot defeat the assignment by voluntary transfer to another of his right of entry to prospect for and recover oil. Title to an undivided interest in the oil produced will vest in the holders of percentage interests in like manner as if the oil had been produced by the original lessee.

The doctrine of potential possession is applied to mortgages as well as to sales. (*Arques* v. *Wasson, supra; Lemon* v. *Wolff, supra; Hall* v. *Glass, supra.*) Appellant

Standard Pipe & Supply Co. holds an assignment of ten per cent of the gas and oil to be produced as security for cash rental for pipe supplied to Miller. Although section 2955 of the Civil Code does not expressly authorize a mortgage on oil to be produced, it is provided in section 2973 of the Civil Code that a mortgage of personal property other than that mentioned in section 2955 of the Civil Code is valid between the parties and those who take with notice.

Royalty interests are very generally created by instruments similar in form to those we are here considering. Although persons purchasing royalty interests in oil may be making a highly speculative investment, it is certainly not within their contemplation that they are paying over their funds in return for a mere personal and conditional covenant of the lessee, which he may render absolutely worthless as to purchasers of royalty interests by a voluntary assignment of his lease. Respondent Venago Oil Corporation contends that Miller was faced with the necessity of abandoning the well for want of further funds, and that the well was deepened and brought into production with funds furnished after control had passed from Miller. Miller had drilled the well to a depth of over 4,500 feet, and the funds of appellants had been used in this development. The well was brought into production at 7,289 feet. The funds of appellants, or of their assignors where the units have been assigned, and the pipe supplied by appellant Standard Pipe & Supply Co. contributed to the completed development of the well. The persons who acquired control of the Venago Oil Corporation had notice of the royalty interests issued by Miller. That they were not misled as to the rights of the Miller unit holders is indicated by the fact that Mark F. Jones, an attorney and one of the three persons who succeeded Miller in control of the corporation, had prepared an application to the commissioner of corporations on March 22, 1929, for leave to issue units of the corporation to the persons to whom Miller had issued units. This application was withdrawn as Jones and his associates assumed control on March 29th.

■ Respondent Venago Oil Corporation relies on the recent decision of the federal Circuit Court in the cases of *In re Lathrap,* 61 Fed. (2d) 37, which arose in California. That case involved the rights of creditors represented by the

trustee in bankruptcy of the operating lessee of an oil-well. The court was of the view that persons purchasing royalty interest are coadventurers and co-investors in a business enterprise, in a similar position to the purchasers of stock in a corporate enterprise, whose chance of gain involves a corresponding risk of loss, and that accordingly their rights in the proceeds of oil produced should be subordinated to the rights of creditors of the enterprise represented by the trustee in bankruptcy of the operating lessee. Considering the nature of royalty interests, it may well be that this court would also reach the conclusion that by necessary implication it is an incident of the contract and status of unit holders that in a proper case their rights must be subordinated to those of general creditors. This question we do not decide in the case herein. The Venago Oil Corporation does not appear as a creditor of an operating lessee claiming the right to reach the proceeds of oil produced by him to an extent necessary to satisfy a debt. Rather, it claims the entire output of the well as assignee of the operating lessee, on the theory that the royalty interests issued by Miller created no rights in oil produced by him personally.

The decisions of the courts of this state cited by the federal court in the Lathrap case sustain that court's conclusion that neither the owner of oil lands nor the lessee thereof has an absolute title to oil and gas in place as part of the realty, but only a right to prospect for oil and reduce it to possession as personal property. (*People* v. *Associated Oil Co.*, 211 Cal. 93 [294 Pac. 717]; *Bandini Petroleum Co.* v. *Superior Court*, 110 Cal. App. 123 [293 Pac. 899].) But we do not find that the recent decisions of the courts of this state repudiate the doctrine of potential possession as applied to sales of royalty interests in oil and gas to be produced. The holding of the federal court, although entitled to respect and careful consideration, is not binding or conclusive on the courts of this state. (*Bank of Italy Nat. Trust & Sav. Assn.* v. *Bentley*, 217 Cal. 644 [20 Pac. (2d) 940].)

In *Black* v. *Solano Co.*, 114 Cal. App. 170 [299 Pac. 843, 845], the appellate court, in considering the nature of the interest of purchasers of percentage units of oil "produced, saved and sold" said: "The oil was, however, potential

personal property and so the subject of a sale (as distinguished from an executory contract to sell). 'In such case, the sale is absolute and perfect when made vesting the property in the purchaser the moment it comes into existence.' [Citing cases.]

"In view of these principles, it is necessary to conclude that there was nothing more than a present sale of potential personal property accomplished by the transfer on which plaintiff relies."

In the recent decision in *Jones* v. *Pier, supra,* is the following statement: "By the terms of his assignment of April 3, 1923, the plaintiff acquired an undivided one per cent interest . . . in all oil, gas or other hydrocarbon substances produced from the land therein described, for the term of twenty years from the date of the original lease, *regardless of who produced the same.* The lease created a vested right in property even though it was not accompanied by actual physical possession of the subterranean deposit of gas or oil. . . .

"The plaintiff is therefore entitled to have quieted in him his undivided one per cent of all oil, gas and other hydrocarbon substances which may be developed or produced from the property during the term prescribed in the original lease *or until that instrument is lawfully terminated."* (Italics supplied.)

In *Merrill* v. *California Petroleum Corp.,* 105 Cal. App. 737 [288 Pac. 721, 723], is the following statement: "While the oil in its natural deposit was a part of the land, it was in actual existence as part of the land, and was potentially personal property under the terms of the lease, and actually became personal property to the extent of the amount thereof involved in this action when the lessee exercised his right to extract it. . . .

"By the sale to plaintiff [purchaser of royalty interest] he and Lake [operating lessee] became tenants in common of the oil produced."

The decision in *Richfield Oil Co.* v. *Hercules Gasoline Co.,* 112 Cal. App. 431 [297 Pac. 73], is not in conflict with our conclusion herein. In that case the plaintiff was not an investor who had purchased a percentage royalty of gas and oil to be produced, saved and sold, but an oil company engaged in the business of refining and distributing oil,

which had contracted for actual delivery of the crude oil production of the operating lessee under an executory contract of sale.

There remains to be considered the effect of Miller's failure to procure a permit from the commissioner of corporations for sale of royalty interests. Appellants contend that those provisions of the Corporate Securities Act which require a permit for the sale of rights to share in undeveloped oil, gas and other hydrocarbon substances are unconstitutional in so far as they purport to require an individual to procure a permit for the sale of fractional interests in oil and gas to be produced from an oil lease owned by him, citing *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089]. Appellants further contend that if the pertinent provisions of the act are constitutional as applied to sales by an individual under such circumstances, nevertheless the purchasers of such securities are not *in pari delicto* with the individual issuing them, by virtue of which the issuer of the securities cannot raise the defense that they were issued without a permit. In support of this contention, appellants rely on our recent decision in *Eberhard* v. *Pacific Southwest L. & M. Corp.,* 215 Cal. 226 [9 Pac. (2d) 302, 303].

The question as to the constitutionality of the provisions of the act which require an individual to obtain a permit for the issuance and sale of instruments evidencing the right to participate in oil and gas, or the proceeds thereof, to be produced under a lease owned by him, is pending before this court in the case of *People* v. *Craven,* Crim. No. 3660. Said case is before us upon order of transfer after decision of the Appellate Court, Second District, Division One, sustaining the right to sell without procuring a permit. For the purpose of the appeals herein we need not determine this issue, since under our decision in the Eberhard case, *supra,* even if a permit should have been obtained this defense is not available to Miller and his assignee with notice, Venago Oil Corporation.

In the Eberhard case an action was brought to foreclose a mortgage securing a note held by plaintiff, which was one of a series of notes secured by mortgage and issued by the mortgagor. In defense of the foreclosure action the corporation mortgagor alleged that the notes and mortgages com-

posing the series were all securities within the language of the Corporate Securities Act, and having been issued and sold without the permit of the corporation commissioner were void, wherefore defendant prayed judgment against plaintiffs declaring that plaintiffs take nothing and that said note and mortgage be declared null and void. In sustaining the judgment of the trial court ordering foreclosure of the mortgage, this court said:

"If, however, for the purposes of this opinion, the necessity for a permit be conceded, there is nothing whatsoever to show that plaintiffs are anything more than the innocent victims of appellant, which now seeks to profit by its own deliberate wrong.

"The inhibitions of the Corporate Securities Act (Deering's Gen. Laws, Supp. 1929, p. 3287, Act 3814) against sales of securities to the public without permits are meant to protect the public from imposition and deception—not primarily to benefit the seller. The seller and the purchasers are therefore in no sense *in pari delicto* where this provision is violated. The fact that the transaction may be void at the behest of the purchaser, is not to allow a premium for real wrong done by the seller. The fundamental maxim that 'no one can take advantage of his own wrong' (sec. 3517, Civ. Code), and other kindred principles, immediately recur to mind. The above is but a recast of the doctrine abundantly supported by authority and applied in cases involving this very act done under similar circumstances. [Citing cases.]"

The decision in the Eberhard case was followed in *Braunstein* v. *Title Guarantee & Trust Co.*, 216 Cal. 780 [17 Pac. (2d) 104], wherein the securities were not sold without a permit, but in violation of the terms of the permit.

Respondent Venago Oil Corporation contends that the Eberhard case is distinguishable from the instant case. It has uniformly been held that the purchaser, not being *in pari delicto* with the seller, may recover the consideration paid for the securities, and where judgment is allowed on a promissory note, this is the extent of the recovery, respondent states. The cases cannot be so distinguished. In the Eberhard case the action was brought to foreclose the mortgage securing the note, and not solely to obtain a money judgment for the amount advanced. The action was based,

and the judgment awarded, on the terms of the instruments, which it was contended had been issued in violation of the act, rather than on a rescission and disaffirmance of said instruments.

The Corporate Securities Act was designed to protect purchasers from worthless securities. In the case herein the units proved to be valuable notwithstanding they were issued without a permit. If the issuer of securities, or the assignee of his lease with notice, were permitted to defeat the sale of fractional interests of oil and gas to be produced, the anomalous situation would exist that the issuer of fractional interests in oil and gas to be produced who violated the law by failing to procure a permit would be in a better position than the individual who complied with the law. The owner who sold units without a permit would be enabled to retain the entire production of the well and reap a large profit, and this, although the act was enacted for the benefit of purchasers.

■ Respondent Venago Oil Corporation contends that the rule of the Eberhard case does not protect appellant Standard Pipe & Supply Co., for the reason that it appears to be *in pari delicto* with Miller, who issued the securities. This contention cannot be sustained in the light of recent decisions. The terms of the contract for rental of the pipe to Miller were agreed on and the pipe delivered to him and immediately put to use the latter part of January, or the early part of February, 1929. Said contract was reduced to written form by said appellant about February 1st. Two instruments dated February 1st evidencing the two per cent assignment and the ten per cent assignment as security were delivered to Miller about that date. They bear Miller's acknowledgment dated March 7th, and he claims that he did not sign them until that date, and between February 1st and March 7th informed appellant several times that he was unwilling to sign because he had not obtained a permit. The appellant was of the view that no permit was required for the transaction. Miller admits that appellant was not informed of the absence of a permit until after the pipe had been delivered.

Recent decisions indicate that the purchaser will not be held to be *in pari delicto* unless there is a conspiracy or intent to defraud and evade the act, or the terms of a

permit actually issued, in which the purchaser participates, or other reasons making it inequitable to grant relief. In *Walker* v. *Harbor R. & Dev. Corp.*, 214 Cal. 46 [3 Pac. (2d) 557], the purchaser was held entitled to recover although she was an incorporator and director of the corporation issuing stock and had attended directors' meetings. In *Olds* v. *Simmons*, 123 Cal. App. 275 [11 Pac. (2d) 36], the appellate court, relying on our decision in the Walker case, granted relief although plaintiff's assignor to whom the stock was issued was employed to promote formation of the corporation and assist in selling stock. In our recent decision in *Randall* v. *California Land Buyers Syndicate*, 217 Cal. 594 [20 Pac. (2d) 331], we stated the rule as follows:

"Although the parties seeking affirmative relief, i. e., the buyers of such stocks, may be in some degree guilty with the parties against whom the relief is sought, they will be denied relief only where the record shows that they are equally culpable (*Campbell* v. *Julian Merger Mines*, 111 Cal. App. 649 [295 Pac. 1040]); and, considering the object and purpose of the Corporate Securities Act, mere knowledge of the terms of the permit or of the fact that no permit has been issued, may not alone be sufficient to raise the guilt of the purchaser or subscriber to that degree." (Citing *In re Builders' Finance Assn.*, 26 Fed. (2d) 123; *Walker* v. *Harbor R. Corp.*, *supra; Olds* v. *Simmons*, *supra.*)

The federal District Court in *Cecil B. De Mille Productions* v. *Woolery*, 61 Fed. (2d) 45, which arose in California, reached a conclusion contrary to that we here state as to the rights of purchasers of royalty interests where the permit of the commissioner of corporations has not been obtained. The federal court relied on decisions of the courts of this state decided prior to our final decision in *Eberhard* v. *Pacific Southwest L. & M. Corp.*, *supra*. In so far as said decisions are in conflict with the Eberhard case they have been overruled.

▮▮ The appellants prayed for an accounting to determine the amounts which they were respectively entitled to receive of the proceeds from the sale of oil by Venago Oil Corporation to Western Oil and Refining Company, plaintiff in interpleader. In view of the trial court's conclusion that appellants had no interest in the sums due or to become due from Western Oil and Refining Company, no com-

putations were made by said court as to the amounts to which said appellants would severally be entitled had the validity of their interests been upheld. As a result of our conclusion upholding said units as a matter of law, an accounting is necessary. Certain of the royalty interests were subject to deduction to share in the operating costs of the well, and there are numerous other computations required to be made before the exact amount to which the appellants are severally entitled can be determined. Therefore, the judgment is reversed as to the appealing defendants, with directions to the court below to proceed to take an accounting, to be based upon the evidence taken upon the trial herein, and to take additional evidence, if upon the accounting it appears that further evidence is needed to accurately calculate the share of each appellant. Said accounting should be taken by the judge who tried the action herein. (*Hughes* v. *De Mund*, 96 Cal. App. 365 [274 Pac. 405] ; *De Mund* v. *Superior Court*, 213 Cal. 502 [2 Pac. (2d) 985].)

It is so ordered.

Shenk, J., Waste, C. J., Preston, J., and Langdon, J., concurred.

Rehearing denied.