304

In re SENTINEL OIL CO.
No. 26521.

District Court, S. D. California, Central Division.
April 10, 1939.

Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, all of Los Angeles, Cal., for the Collector of Internal Revenue.

Grainger & Hunt and Reuben G. Hunt, all of Los Angeles, Cal., for debtor corporation.

JENNEY, District Judge.

This case arises on objections by the Collector of Internal Revenue to the report of the Special Master. The material facts are as follows: Sentinel Oil Company was organized in 1934 as a California corporation. The corporation purchased several parcels of land at Long Beach and received deeds conveying to it a large percentage of the fee. The balance of the fee was retained by the grantor, with the understanding that the vendee was to drill a well on each of the parcels and that the grantors would have a designated percentage in the proceeds from the well. The corporation drilled three wells. Well No. 1, which was commenced in 1934, was completed and put on production in 1935. Well No. 2 was drilled, completed and put on production in 1935. Well No. 3 was drilled, completed and ascertained to be a dry hole in 1935.

Debtor corporation did not pay any income tax for the calendar year 1934. A return, however, was filed showing a net loss for that taxable year. The return for 1935 likewise showed a net loss for the year and that no tax was due.

On September 19, 1935, debtor corporation filed its petition under Section 77B of

the Bankruptcy Act, 11 U.S.C.A. § 207, which petition was approved by the court. A representative of the Collector of Internal Revenue went over the books of the corporation in 1937; as a result of which investigation it was determined by the Commissioner of Internal Revenue that an income tax was due from debtor for the calendar year 1935. Claim was duly filed for the amount of the tax and the matter was referred to a special master for hearing, upon the completion of which a report was filed disallowing the Government's claim in full.

The Government's objections have been narrowed down to two substantial issues, which are the sole questions raised on this review of the Special Master's report. Counsel for the Government have expressly abandoned any claim that the expenditures on Well No. 3 should have been treated as business expenses rather than as a claimed capital loss. Cf. Edwards Drilling Co. v. Com'r, 35 B.T.A. 341.

The first issue is as to whether or not the debtor corporation may properly claim, as deductible, a loss which occurred during the year 1935 upon Sentinel well No. 3. The parties agree that the loss, if deductible, amounted to $25,418.66 and, if allowed as a proper deduction for that year, would entirely wipe out the taxable net income, leaving no taxes due.

The second issue before the court is whether or not debtor was entitled to take a depletion allowance as to Sentinel wells Nos. 1 and 2.

The Special Master held against the Government on both issues and his report is now before the court upon the objections of the Government thereto.

The Government's contention on the first issue may be briefly stated as follows: Even though the Special Master found as a fact that during 1935 well No. 3 was conclusively ascertained to be a dry, worthless and unproductive hole, nevertheless no deduction of a capital loss as a result thereof might be claimed by debtor, until the land in question had been sold and the loss definitely determined by such sale. The Government cites the various provisions of the statutes and the regulations and numerous cases relating to the sale of land as a basis for determining the worthlessness of the asset. Since no sale of the land has been had here, the Government claims that the necessary prerequisites to the claiming of a deductible loss have not been fulfilled. The report of the Special Master shows that the evidence disclosed the land itself to be worth not more than $500.

The court agrees with the conclusions reached by the Special Master and believes that Section 23(h) of the Revenue Act of 1934, 26 U.S.C.A. § 23(h), and Sections 113(a) and (b) of the same act, 26 U.S. C.A. § 113(a, b), are not conclusively determinative of the issue presented here. The cases cited by the Government are predicated upon the theory that the capital investment of the taxpayer was in the land itself. The Florida land boom cases are of course controlling where such was the fact. Greenleaf Textile Corp., 26 B.T.A. 737, affirmed 2 Cir., 65 F.2d 1017 (without opinion); In re Krauss' Estate, 30 B.T.A. 62.

The Government insists that those cases are decisive here because the consideration for the sale of the land to debtor corporation was the promise on the part of debtor to drill an oil well. The court finds itself unable to follow this interpretation of the contract between the debtor and the vendor. So far as the record discloses, the consideration for the sale of the land was not the drilling of the oil well, but the right to receive a percentage of the proceeds from the production of the well, if any. Debtor's capital investment therefore was the money expended in drilling. When it became clear that the result was nothing but a dry hole, moneys expended by the debtor became a total loss except for such salvage value as the equipment might have. This salvage has been duly taken into consideration in the Government's computation. See In re Hoffman, D.C., 16 F. Supp. 391, 33 A.B.R.,N.S., 141.

The court believes that the controlling analogy is not that of the Florida land boom cases, supra, but rather the provisions of the law relating to worthless debts. A sale of the land cannot logically be held to be necessarily prerequisite to a claim for a deductible loss on the oil well. The purpose of this section of the tax statute is to require the establishment of some definite event as fixing the time at which the depreciated value accrued, and the exact amount of the loss was established. The only way by which a loss in value of land alone can be definitively ascertained is by a sale, for though the land may be worthless as residential prop-

erty it still may be useful for grazing or farming or garbage dumping. But no sale of the land can possibly make more definite the fact that the result of several weeks' drilling is not an oil well but a hole in the ground. The land here may still have many uses, but its diminished value is not claimed as a deductible loss by debtor. Hence the value of the land apart from the oil well is not in question.

■ The statute and the regulations contemplate the deduction "of losses· which are fixed by identifiable events, such as the sale of property (Arts. 141, 144) or caused by its destruction or physical injury (Arts. 141, 142, 143) or in the case of debts, by the occurrence of such events as prevent their collection (Art. 141)." United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Commissioner v. Rhodes, 6 Cir., 100 F.2d 966, reversing 34 B.T.A. 212; Brumback v. Denman, 6 Cir., 58 F.2d 128, affirming D.C., 48 F.2d 255.

A determination that the well is a dry hole and its abandonment in the manner required by state regulations may not affect the value of the land for real estate sales purposes. It is however a definite determination that the expenditures on the well have been lost.

The court therefore feels that the deductible loss should be allowed at the figure agreed upon by the parties. Bliss v. Commissioner, 5 Cir., 57 F.2d 984.

On the second issue the Government's contention is that since it was charged that Sentinel wells Nos. 1 and 2 (the producing wells) were whip-stocked, i. e., bottomed in the land of an adjacent property owner, and that therefore the oil produced did not come from the land of the Sentinel Oil Company, a depletion allowance was improper.

The basis of this contention was the fact that suits had been instituted in the Superior Court of Los Angeles county by the adjacent land owners against the Sentinel Oil Corporation, predicated upon alleged whip-stocking. Debtor corporation in those suits entered verified answers consisting of general denials. Pursuant to order of this court, the suits in the state court were settled with a restricted judgment entered against debtor corporation to the effect that the wells should be abandoned and the equipment salvaged, without any findings of fact as to whether or not the wells were actually whip-stocked or the oil had come from the lands of a neighbor.

No evidence was introduced before the Special Master as to the fact of whip-stocking, and a definite finding of fact was entered by the Special Master to the effect that the state court judgment was restricted as above indicated. The correctness of this finding of fact is not questioned by the Government.

■ True, the bare allegation of whip-stocking appears in the complaints filed in the state court, which allegation of fact was denied under oath and which was not substantiated by evidence. Under the circumstances here, the restricted judgments entered in the state court cannot be construed to be adjudications of the fact of whip-stocking nor any proof thereof. So far as appears from the record, the oil was taken from the ground on the property of the Sentinel Oil Company, and was at all times its ·property. No sufficient evidence has been introduced to support the Commissioner's determination that the depletion allowance should be denied. Although the burden is upon the taxpayer to rebut the presumptive correctness of the Commissioner's determination, nevertheless when that determination has been shown to be without substantial factual basis, it must be rejected by the courts.

■ In addition, of course, in this case, there is the California presumption, based on Section 1963(11) of the Code Civ.Proc., that property which a person possesses is owned by him. Here, the oil was in the possession of the Sentinel Oil Company, on whose land it was brought to the surface. See also Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Western Oil Company v. Venago Oil Corp., 218 Cal. 733, at page 738, 24 P.2d 971, 88 A.L.R. 1271.

■ Accordingly the depletion allowance as claimed by the debtor should be permitted.

The report of the Special Master is therefore confirmed and the objections thereto are overruled.

So ordered.