[Civ. No. 25544. Second Dist., Div. One. Oct. 30, 1961.]

JAMES N. RANKIN et al., Respondents, v. FRED BANKEY
et al., Appellants.

Crowley & Rhoden and Ben Levin for Appellants.

Paul S. Crouch for Respondents.

LILLIE, J.—Plaintiffs Rankin and Myers sought a declaration that since November 14, 1952, each is the owner of 33⅓ shares of defendant Frebank Company, and each is entitled to 133⅓ shares of the 800 shares of stock issued by Frebank as a stock dividend to shareholders of record on April 5, 1957. Defendants Bankey and Frebank Company appeal from a judgment in plaintiffs' favor. Appellants now contend that the certificates representing plaintiffs' stock, and the agreement between them to issue the same, were void, and that plaintiffs are not stockholders of record.

Viewing the evidence in a light most favorable to respondents the following facts were established. In 1949, plaintiff Rankin, a brother-in-law of defendant Bankey, and plaintiff Myers, a long-time friend, each gave to Bankey $7,250 to invest in the W. S. Freely Company. As a result, each plaintiff acquired a ¼ interest in the company, Freely had the remaining ½ interest, and Bankey operated the business under a profit-sharing agreement. Thereafter, W. S. Freely Co. was sold; Bankey told plaintiffs he had $10,900 which represented their interest and which belonged to them. Plaintiffs, each of whom made his living in other businesses, told Bankey to keep the $10,000 and reinvest it for them in a new venture; thus, he kept the same and divided the remaining $900 equally between plaintiffs. During this time Bankey and one Rockwell were in the process of incorporating Frebank Company; in it Bankey invested, on their behalf, the plaintiffs' $10,000. Thereafter, Bankey told them that for "convenience" he intended to have the stock issued by the Cor-

poration Commissioner to just two persons, Bankey and Rockwell, that this would be more "simplified" than having all of their names on the corporation books, and that when the application was granted and the permit issued he would receive 100 shares which he would later divide three ways, in equal shares to himself, Rankin and Myers. On February 23, 1951, the Corporation Commissioner issued a permit to Frebank Company to issue to Bankey and Rockwell, or either of them an aggregate not to exceed 200 shares for $50 per share cash; accordingly, the stock was issued—100 shares to Bankey, represented by certificate Number 1, and 100 shares to Rockwell. In 1950 or 1951 Bankey asked plaintiffs for their proxies. For over a year and a half, to November 14, 1952, Bankey held the 100 shares in his name; then on November 14, 1952, he surrendered to Frebank Company certificate Number 1, representing his 100 shares, and caused to be issued in lieu thereof, certificate Number 7 in the name of Rankin representing 33⅓ shares (Exhibit 1), certificate Number 8 in the name of Myers representing 33⅓ shares (Exhibit 2), and certificate Number 9 in his own name representing 33⅓ shares. Bankey then offered Rankin certificate Number 7, but inasmuch as Rankin was then unmarried and had no fixed place of abode, he asked Bankey to hold it for him and keep it in his strong box. Myers had "many, many times" demanded the stock; finally on November 14, 1952, Bankey gave him the certificate.

At no time during the period in question did either Myers or Rankin ever lend Bankey any money, and in particular, they never lent him $7,250 or $5,000. The money plaintiffs gave him was for investment purposes only; it was never considered by them, nor did they ever intend it, to constitute a loan to Bankey; nor did Bankey during the time in question or thereafter, until he contemplated the within action, ever consider the money to have been given to him as a loan.

From the time Bankey invested plaintiffs' $10,000 in Frebank Company, Bankey paid to Rankin around $3,300 in sums of $450, $1,000, $500, $500, $500, $100, $100 and $83.34; with the exception of the $450, which is not here material, and the $1,000 which was paid to him in 1953 as a "return of investment," each time Bankey gave him money, he told Rankin that it was a "gift" because they (the Company) were doing so well or "he was having a good year and he was declaring a little cheer." On each occasion the amount was paid in cash or by Bankey's personal check, and Rankin said

to Bankey: "Fred, I would rather that we had dividends instead of gifts." Finally Rankin asked him why he was receiving money from him and not from the corporation, and why he was not receiving dividends; Bankey replied that if he paid dividends he would have to pay one-half of them to McCoy (who then owned Rockwell's share) which he did not want to do, and that he was able to do it this way because he told McCoy he had a little expense money he could "divie up from time to time." In the meantime, around 1954, Rankin began asking Bankey for his stock certificate and from then on asked him "many, many times," perhaps a dozen; each time Bankey put him off and finally in the summer of 1956 it was given to him.

Myers received approximately $2,083.33 in the same manner; Bankey gave him various amounts either in cash or by his check, as "gifts"; he repeatedly asked Bankey for dividends of the Corporation instead of "gifts," but Bankey told him the company could not afford it and what he was paying came out of his expense account. In the meantime, plaintiffs asked for yearly financial statements; one year Bankey sent them one. In 1957 or 1958 he asked for the return of their proxies, also to see the books; Bankey told them they were so entitled. In late 1957 or early 1958 each plaintiff received a check for $83.34 in a letter from Bankey saying, "The company has declared a $2.50 per share dividend." On April 5, 1957, a permit for Frebank Company to issue 800 dividend shares to its shareholders of record was granted by the Commissioner of Corporations. These shares were issued.

The issue presently before this court—that the stock is void because the agreement to purchase the same was entered into prior to the granting of a permit by the Commissioner of Corporations—is presented for the first time on this appeal. The defense proceeded in the trial court on the theory that plaintiffs loaned Bankey the $10,000, and that the monies thereafter paid to them by Bankey constituted repayment; and that neither plaintiff was ever entitled to a share of stock of Frebank, ever owned one, ever had been issued one, or was ever a stockholder of record. Bankey claimed, as alleged in his answer, that certificates Number 7 and Number 8 issued to Rankin and Myers were obtained by them without consent of the corporation and were signed by him (Bankey) without his consent (Par. II); and that there was collusion between

plaintiffs and the secretary of the corporation, and fraud in obtaining his (Bankey's) consent to the signing, as president, of certificates Number 7 and Number 8. (Pars. II and III.) However, Bankey's evidence, in particular his own testimony, is silent on these matters, although throughout the trial he refused to acknowledge either plaintiff as a stockholder. He was vague and evasive concerning the existence of certificates Numbers 7, 8 and 9 and his part in issuing them, and what happened to certificate Number 1; and continued, without explanation, to deny the issuance and delivery of the certificates to Rankin and Myers. He then insisted that plaintiffs lent him the $10,000 to start a business and that the money was strictly a loan, but he admitted he gave them no notes and paid no interest. He testified that some of the money he gave plaintiffs was repayment on the loan, and that the $83.32 claimed by plaintiffs to be a corporate dividend, was actually 1/6th of $500 divided equally among his four children and Myers and Rankin for Christmas. At the conclusion, the trial judge commented, among other things, that "someone has committed perjury in this case."

The trial court found that since November 14, 1952, Rankin and Myers were owners respectively of 33⅓ shares of stock of defendant corporation as represented by certificates Number 7 and Number 8; that they have been and now are stockholders in the Frebank Company since that time; that defendant corporation and Bankey have no interest in and to the shares of stock issued to plaintiffs; that on April 5, 1957, there were 200 shares of stock in the corporation issued and outstanding and each plaintiff was the owner of 33⅓ shares and a stockholder of record; and that on December 31, 1956, defendant Bankey fraudulently caused the records of Frebank Company to be altered as to reflect him to be the owner of 100 shares and plaintiffs as having no shares.

 The record clearly supports the fact that no loan of money was involved and that plaintiffs and defendant Bankey intended the $10,000 to be an investment; that Bankey, with another person, organized a corporation, Frebank Company, and did therein invest the $10,000 for plaintiffs; that plaintiffs then believed that they would each receive one-third of Bankey's interest in the company and that this was then the intention of Bankey; and that on November 14, 1952, Bankey turned back to the company his 100 shares and caused the corporation to issue therefrom 33⅓ shares to each plaintiff, and he intended then and there to do so. Evi-

dence of Bankey's conduct, since 1950, reflects the investment of plaintiffs' money for them, his intent to thereafter turn stock over to them, the issuance of the stock and delivery of the certificates to plaintiffs and his treatment of each plaintiff as the owner of 33⅓ shares.

Appellants predicate the invalidity of the agreement to issue plaintiffs' stock in Frebank Company for their $10,000, on the fact it was made prior to the time the company obtained a permit from the Corporation Commissioner; they argue that the shares transferred pursuant thereto are void.

The record supports no contention precluding plaintiffs' recovery as stockholders in Frebank Company. The company obtained a valid permit from the Commissioner of Corporations for the issuance of 100 shares of stock to Bankey and 100 to Rockwell; accordingly, and in full compliance with the terms of the permit, Frebank issued 100 shares to Bankey. Bankey held these shares for almost two years; on November 14, 1952, he caused the transfer of two-thirds of his stock to plaintiffs; he did this by surrendering certificate Number 1 (representing 100 shares) to the company, and as its president, causing a certificate to be issued to each plaintiff for 33⅓ of his shares. Actually, the transfer of stock to plaintiffs was not from the original stock issue of Frebank Company in the sense that it was issued directly to them by the corporation in its first stock issue after the permit was granted. Such a private transaction between a stockholder and others is not proscribed by the Corporate Securities Act; nor is it against this kind of transaction the act was intended to protect. Further, plaintiffs, as purchasers, are seeking to uphold the validity of the transfer; the stock is not worthless or the result of a fraud perpetrated on them or anyone else, but represents shares of a valuable business in which plaintiffs made an investment and which long before accepted their money. Moreover, at all times from 1952 to the onset of the within litigation, the transfer of the stock to plaintiffs has been considered by Bankey and the corporation as valid and subsisting and plaintiffs treated as stockholders. (*Kauffman* v. *Meyberg,* 59 Cal.App.2d 730 [140 P.2d 210].) Moreover any suggestion that plaintiffs were *in pari delicto* with Bankey is wholly without merit—the trial court made no finding in that connection, the evidence supports no conduct that would place them in such a situation, and it is plainly not a fact.

To sustain the invalidity of the stock as having been issued

under an agreement entered into before a permit was obtained by the corporation, appellant cites section 26100 Corporations Code, and among other cases, *Lance* v. *Forsberg,* 106 Cal. App.2d 226 [234 P.2d 662]; *Adkins* v. *Wyckoff,* 152 Cal. App.2d 684 [313 P.2d 592], and *Reed* v. *Norman,* 41 Cal.2d 17 [256 P.2d 930], all of which refer to an original stock issue of a corporation, either after expiration of a permit or not in accord with its terms, and *Black* v. *Solano Co.,* 114 Cal.App. 170 [299 P. 843]. However, another line of authority makes it clear that not all securities sold without a permit first having been obtained, in violation of the act, are invalid; that where a purchaser is innocent of wrong, is seeking to uphold the validity of the security, and there are no reasons making it inequitable to grant relief, the security may be declared to be valid as to him and binding upon those selling or issuing the same. (*Western Oil & Ref. Co.* v. *Venago Oil Corp.,* 218 Cal. 733 [24 P.2d 971, 88 A.L.R. 1271]; *Eberhard* v. *Pacific Southwest L. & M. Corp.,* 215 Cal. 226 [9 P.2d 302]; *Braunstein* v. *Title Guarantee & Trust Co.,* 216 Cal. 780 [17 P.2d 104]; *Domestic & Foreign Petroleum Co.* v. *Long,* 4 Cal.2d 547 [51 P.2d 73].) In each of these cases the security was sold either without or in violation of a permit and it was claimed the sale was void; and in each, the court discussed the purpose of the Corporate Securities Act—that it was designed to protect purchasers from worthless securities and the public from imposition and deception, not primarily to benefit the seller. Thus, the courts have held that the purchaser and seller are in no sense *in pari delicto* merely because the provision requiring a permit is violated. "The fact that the transaction may be void at the behest of the purchaser is not to allow a premium for real wrong done by the seller." (*Eberhard* v. *Pacific Southwest L. & M. Corp.,* 215 Cal. 226, 228 [9 P.2d 302].) In the *Eberhard* case there was nothing to show that plaintiffs (the purchasers) were anything more than the innocent victims of defendant which sought to profit by its own deliberate wrong. In *Braunstein* v. *Title Guarantee & Trust Co.,* 216 Cal. 780 [17 P.2d 104], negotiable notes, construed as securities, were sold to the public in violation of the terms of the permit and thus without the authority of the Corporation Commissioner; validity of the securities was upheld on the theory that the violation "cannot be rested upon the innocent purchaser" (p. 781), following *Eberhard* v. *Pacific Southwest L. & M. Corp.,* 215 Cal. 226 [9 P.2d 302]. In *Western Oil & Ref. Co.* v. *Venago Oil Corp.,* 218 Cal. 733

[24 P.2d 971, 88 A.L.R. 1271], the court upheld the issuance without a permit, of fractional interests in an oil lease to appellant; it said at page 745: "Recent decisions indicate that the purchaser will not be held to be *in pari delicto* unless there is a conspiracy or intent to defraud and evade the act, or the terms of a permit actually issued, in which the purchaser participates, or other reasons making it inequitable to grant relief. In *Walker* v. *Harbor R. & Dev. Corp.*, 214 Cal. 46 [3 P.2d 557], the purchaser was held entitled to recover although she was an incorporator and director of the corporation issuing stock and had attended directors' meetings. In *Olds* v. *Simmons*, 123 Cal.App. 275 [11 P.2d 36], the appellate court, relying on our decisions in the *Walker* case, granted relief although plaintiff's assignor to whom the stock was issued was employed to promote formation of the corporation and assist in selling stock. In our recent decision in *Randall* v. *California Land Buyers Syndicate*, 217 Cal. 594 [20 P.2d 331], we stated the rule as follows: 'Although the parties seeking affirmative relief, i.e., the buyers of such stocks, may be in some degree guilty with the parties against whom the relief is sought, they will be denied relief only where the record shows that they are equally culpable (*Campbell* v. *Julian Merger Mines*, 111 Cal.App. 649 [295 P. 1040]); and, considering the object and purpose of the Corporate Securities Act, mere knowledge of the terms of the permit or of the fact that no permit has been issued, may not alone be sufficient to raise the guilt of the purchaser or subscriber to that degree.' (Citing *In re Builders' Finance Assn.*, 26 F.2d 123; *Walker* v. *Harbor R. Corp., supra*; *Olds* v. *Simmons, supra*.)"

In *Domestic & Foreign Petroleum Co., Ltd.* v. *Long*, 4 Cal. 2d 547 [51 P.2d 73], plaintiff corporation sought relief against the holders of fractional interests in oil and gas produced under a lease. Plaintiff's assignor had transferred these interests without procuring a permit; plaintiff claimed the transfers were void; defendants, the purchasers, claimed them to be valid and binding. The court held in favor of all defendants but one, whom it held to be *in pari delicto*.

Little is said by appellants in their opening brief about the conduct of plaintiffs as compared to that of Bankey, and whether plaintiffs are *in pari delicto* with him, although they cite *Wells* v. *Comstock*, 46 Cal.2d 528 [297 P.2d 961], wherein the court found the purchasers to be *in pari delicto* because the transaction involved a flagrant violation of the terms of

the permit to issue stock, joined in by both parties with full knowledge of the violation. However, in their closing brief they rely on plaintiffs' acquiescence in Bankey's suggestion that their names be omitted from the application for the permit, to show their culpability.

The record before us reveals nothing to place plaintiffs *in pari delicto* with Bankey. They, each otherwise engaged in making a living and obviously not dependent upon the success of his investment in Frebank, showed little concern about their $10,000 after telling Bankey he could invest it for them. The evidence fails to show they knew anything about a permit to issue stock except what Bankey told them, that they knew or were consulted about the original stock issue, that they had any part in the organization of the company or the issuance of stock, that they knew the requirements of the Corporations Code or the necessity for a permit, or that they in any way suggested the omission of their names from the permit or knew any more about the situation than what they learned from Bankey. They were merely advised by him that for "convenience" and to keep it "simplified," their names would not appear on the application or permit; plaintiffs then obviously trusted Bankey, accepted what he told them, let him take care of the details and gave the matter no more thought. There is nothing in the evidence to show they had any reason to believe they might be violating the law or entering into a questionable transaction; certainly there is no showing that they conspired with Bankey, tried to defraud anyone or attempted to evade the act. Beyond knowing their money was invested in the corporation, their expectation that in return therefor stock would be transferred to them, and the knowledge that their names would not appear on the permit for "convenience," there was in no sense of the law on plaintiffs' part any "conspiracy or intent to defraud and evade the act, or the terms of a permit actually issued, in which the purchaser participates, or any other reasons making it inequitable to grant relief." (*Western Oil & Ref. Co.* v. *Venago Oil Corp.*, 218 Cal. 733 [24 P.2d 971, 88 A.L.R. 1271].) What Bankey's real reasons for not wanting plaintiffs' names on the application and permit were, we can only guess; but judging from his subsequent conduct and the resultant litigation, it appears he took advantage of the situation to try to convert an actual investment into a loan in order to deprive plaintiffs of their rightful interest in the business and its profits. What "guilt" may attach to plaintiffs

seems to arise only out of passive acquiescence in Bankey's act and does not appear to be such as to deprive them of their investment; in any event, they certainly could not be "equally culpable" with Bankey. (*Randall* v. *California Land Buyers Syndicate,* 217 Cal. 594 [20 P.2d 331]; *Willens* v. *Hagge,* 154 Cal.App.2d 242 [316 P.2d 29].)

Nor is there merit in appellants' contention that the plaintiffs' only remedy was a suit for damages or recovery of the purchase price, citing *Randall* v. *Beber,* 107 Cal.App.2d 692 [237 P.2d 994]; *Mannion* v. *Baldwin,* 217 Cal. 600 [20 P.2d 678]. We find nothing in either of these cases limiting the remedy of a purchaser of stock under these circumstances to an action for damages or recovery of the purchase price. It is not uncommon for such a purchaser to seek a determination of the court that the securities are valid as to him. In *Domestic & Foreign Petr. Co., Ltd.* v. *Long,* 4 Cal.2d 547 [51 P.2d 73], plaintiff sued for a declaration that defendants had no rights under the oil lease and that their transfers were void because no permit had been issued; defendants prayed that the interests held by them be declared valid. A judgment for defendants (except as to one who was held to be *in pari delicto*) was affirmed. Said the court at page 558: "Defendants, who are the owners of these interests, nevertheless do not seek to rescind nor to recover damages, but, rather, pray that the court determine the securities to be valid as to them, and binding upon plaintiff as successor in interest of the lessees by whom the securities were issued."

We deem nothing in appellants' argument or in the cases cited in support thereof to require a reversal of the within judgment under the findings. The equities of the case clearly point to the trial court's determination that plaintiffs are stockholders of record of Frebank Company. (*Michell* v. *Grass Valley Gold Mines Co.,* 206 Cal. 609 [275 P. 418].) For years Bankey and the corporation treated plaintiffs' stock as valid and them as stockholders. The issuance of the stock to plaintiffs was not directly out of the original stock issue under the permit, but even construed as such, the evidence fails to place plaintiffs in such a position as to deprive them of a declaration of the validity of the stock. Consideration of other of appellants' contentions reveals no point justifying reversal.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.