## J. K. McAlpine Land & Development Company, Ltd., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 99599. Promulgated February 4, 1941.

*Arthur C. Fisher, Esq.*, for the petitioner.

*E. A. Tonjes, Esq.. Alva C. Baird, Esq.*, and *Frank T. Horner, Esq.*, for the respondent.

524

BLACK: The first of petitioner's principal contentions, as noted in our preliminary statement, is that under the Corporate Securities Act of California the issue of the 8,000 shares of class B stock of Bakersfield Memorial Park, Inc., a Nevada corporation, was void because no permit for the issue thereof had been obtained from the Commissioner of Corporations of California. In support of this contention petitioner cites and relies upon the two cases of *Boteler* v. *Conway*, 23 Cal. App. (2d) 35, and *Pollak* v. *Staunton*, 210 Cal. 656; 293 Pac. 26. Petitioner argues that, if correct in this contention, it necessarily follows that when it received the 8,000 shares in question it could not as a matter of law have received anything of value and that the respondent's entire determination of the deficiencies and

penalties in question must be disapproved. Petitioner also makes two other points in connection with this argument. The first is that, if correct in its contention that the 8,000 shares issued were void, then petitioner in delivering 5,044 of the 8,000 shares to the holders of the notes of the face amount of $21,198.38 did not deliver to them anything of value and could not, therefore, liquidate such obligations. The second is that the documents (agreements and options) executed in connection with the notes were also void by reason of petitioner's right to liquidate such notes with the stock in question, and that the sole recourse of the parties holding such documents was limited to a recovery of the cash advanced ($9,173.38) and the property transferred (valued when received at $12,025) or, in the event that such property had been sold by petitioner, to the consideration received ($4,367.47) on the sale thereof. Petitioner's remaining principal contentions are as noted in our preliminary statement.

The respondent simply asks for the affirmance of his determination on the ground that petitioner has failed to prove it wrong in any particular.

We do not wholly agree with either petitioner or the respondent. We do not think petitioner may be heard to contend that the issue of the 8,000 shares was void under the Corporate Securities Act of California. Petitioner caused the Bakersfield Memorial Park, Inc., to be organized and caused it to issue the 8,000 shares without securing the necessary permit from the Commissioner of Corporations of California. Were we now to permit petitioner to contend that the issue of the 8,000 shares was void, we would be permitting petitioner to take advantage of its own wrong, a result which the law disfavors. See *Domestic & Foreign Petroleum Co. v. Long*, 4 Cal. (2d) 547; 51 Pac. (2d) 73; *Laugharn v. Bank of America National Trust & Savings Association*, 88 Fed. (2d) 551. In *Eberhard v. Pacific Southwest Loan & Mortgage Corporation*, 215 Cal. 226; 9 Pac. (2d) 302, the Supreme Court of California in its opinion said:

The inhibitions of the Corporate Securities Act (Deering's Gen. Laws, 1923, Supp. 1927, 1929, p. 3287, Act 3814) against sales of securities to the public without permits are meant to protect the public from imposition and deception—not primarily to benefit the seller. The seller and the purchaser are therefore in no sense in pari delicto where this provision is violated. The fact that the transaction may be void at the behest of the purchaser is not to allow a premium for real wrong done by the seller. The fundamental maxim that "no one can take advantage of his own wrong" (section 3517, Civ. Code), and other kindred principles, immediately recur to the mind. The above is but a recast of the doctrine abundantly supported by authority and applied in cases involving this very act done under similar circumstances. [Citations.]

The record before us does not show that any of the recipients of the stock in question ever at any time contended that it was void and of

no value. A security may have value even if it be issued without a permit. This was the situation in *Western Oil & Refining Co.* v. *Venago Oil Corporation*, 218 Cal. 733; 24 Pac. (2d) 971, wherein the court said, "In the case herein the units proved to be valuable, notwithstanding they were issued without a permit." See also *Julian* v. *Schwartz*, 16 Cal. App. (2d) 310; 60 Pac. (2d) 887. The cases cited by petitioner would be authority in favor of any of the note holders if such holders had elected to contest the validity of the stock, which they did not do. So far as the records show, the stock which was transferred to them by petitioner in 1933 is still valid and outstanding. In fact so far as the record shows the entire block of 8,000 shares is still valid and outstanding. The cases cited by petitioner can not be used as authority in favor of petitioner in this proceeding, for the reasons already stated. Petitioner offered no evidence whatever as to the fair market value of these shares. We hold, therefore, that petitioner has failed to prove that the 8,000 shares received by petitioner during the taxable year did not have a fair market value of $27,040 when received, as determined by the respondent.

The respondent determined that the entire value of the shares was income to petitioner, on the ground that they were received for services rendered by petitioner in organizing the new corporation. But the shares were not received entirely for services rendered, but in part for the liquidation of the advancements of $9,594.53 which petitioner made for the account of the Bakersfield Memorial Park, Inc. We think it follows that only the excess of the value of the shares over such advancements may be considered as income to petitioner for services rendered. It is true petitioner deducted $4,283.53 of the advancements of $9,594.53 in its 1932 return. It did not, however, for the reasons stated in our findings, receive any tax benefit on account of such erroneous deduction in 1932. That being the case, we do not think petitioner should be charged with income in 1933 when it was reimbursed for the expenditures which it made in 1932 for the account of another. As a matter of fact a taxpayer is not entitled to a deduction as business expenses for amounts which it pays out for another and for which it has a contract of reimbursement. Petitioner was reimbursed for what it paid out for the Bakersfield Memorial Park, Inc., in the form of stock issued to petitioner and a part of the cost of that stock to petitioner is what it paid out in both 1932 and 1933.

Upon receipt of the 8,000 shares petitioner used 5,044 of such shares, having a cost basis of $17,048.72, to liquidate its own indebtedness of the face amount of $21,198.38. This unquestionably represented a gain to petitioner of the difference in the amount of $4,149.66. Petitioner suggests in its brief that any such difference would be equivalent

to a forgiveness of indebtedness by the note holders and would not be income to petitioner, since it had requested us to find that petitioner was insolvent both at the beginning and end of the taxable year. The record does not support such a finding of insolvency and, even if it did, it would be of no help to petitioner, as the transaction was not one involving the forgiveness of indebtedness but one involving the payment of a debt by petitioner in accordance with a contract previously entered into wherein petitioner had the option of making payment either in cash or stock. It elected to make payment in stock which had a cost basis to petitioner of $3.38 per share. We hold that the above difference of $4,149.66 was income to petitioner during the taxable year 1933.

During the taxable year 1933 petitioner also used 1,210 of the 8,000 shares for the purposes set out in our findings. We think that petitioner should be permitted to deduct the cost of such shares in the amount of $4,089.80 as an ordinary and necessary business expense.

We hold, therefore, that the additional income from the Bakersfield Memorial Park, Inc., not reported by petitioner in its return was $9,929.45 instead of $19,464.12 as determined by the respondent, which amount of $9,929.45 is arrived at as follows:

| | |
|---|---:|
| Fair market value of 8,000 shares | $27,040.00 |
| Less advancements made by petitioner | 9,594.53 |
| Income to petitioner for services rendered | 17,445.47 |
| Add gain to petitioner in disposition by petitioner of the 5,044 shares in liquidation of petitioner's indebtedness of the face amount of $21,198.38 | 4,149.66 |
| Total | 21,595.13 |
| Deduct expense to petitioner in disposition by petitioner of 1,210 shares | 4,089.80 |
| Correct gain from transaction | 17,505.33 |
| Gain reported by petitioner | 7,575.88 |
| Additional income not reported | 9,929.45 |

The petitioner has offered no evidence to excuse the delinquent filing of its income and excess profits tax return for the taxable year. Hence, in a computation of the deficiency under Rule 50 a 25 percent penalty will be added. On the imposition of delinquency penalties the Commissioner must be sustained.

It may be noted in passing that the losses allowed under respondent's adjustment (c) in the amount of $3,190.36, of which $936.62 was claimed by petitioner on its income tax return and $2,253.74 was allowed in addition in the deficiency notice, cover the losses sustained during the taxable year 1933 on the property disposed of during that

year as set out in the schedule in our findings showing the realization of $4,367.47 from the real estate acquired at a cost of $12,025.

The deficiencies and penalties should be recomputed upon the basis of an adjusted net income of $7,846.20 instead of the $17,380.87 adjusted net income used by the Commissioner in his deficiency notice.

*Decision will be entered under Rule 50.*