Paul J. Toner v. Commissioner.
Toner v. Commissioner
Docket No. 112590.
United States Tax Court
1943 Tax Ct. Memo LEXIS 4; 2 T.C.M. (CCH) 1191; T.C.M. (RIA) 43536; December 31, 1943
*4 Paul J. Toner, pro se. Owen W. Swecker, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: The Commissioner made two adjustments to the net income shown by petitioner's return for the calendar year 1940 and determined a deficiency in income tax in the amount of $1,792.36. The sole charge of error is predicated upon the addition of $15,000 as "Payment for Services." This amount represents the value of 200 shares of Toner's Inc. stock, transferred to petitioner immediately after its organization under the circumstances hereinafter set out. Petitioner's contentions are that the stock "should not be taxed as compensation for services"; but, if it is to be so taxed, that it should be taxed only in the manner and to the extent provided by Section 107, I.R.C., added by Section 220 of the Revenue Act of 1939. [1]
*5 [The Facts] The proceeding was submitted upon the following stipulation of facts: It is hereby stipulated that the following facts are agreed upon, between the petitioner and the respondent, as they may affect the issues involved in the present proceeding: 1. The petitioner is an individual who resided at 661 Clayton St., (now residing at 850 Monaco Blvd.) Denver, Colorado. His income tax return for the year 1940 was filed with the Collector for the Denver district of Colorado. 2. A notice of deficiency (Exhibit A) was mailed to the petitioner on June 26, 1942, in the amount of $1,792.36 for income and defense taxes. 3. The claim of deficiency is based on the receipt by the petitioner, on April 13, 1940, of 200 shares of the common capital stock of Toner's Inc., a corporation organized under the laws of Colorado on April 9, 1940. 4. At the organization meeting of the corporation on April 13, 1940, the following paragraphs, referring to the issuing of stock, appears: On motion duly made, seconded, and carried the Treasurer of the corporation was authorized to sell, and the Secretary to issue, for payment in cash at the par value thereof, the following amounts of stock, *6 common and preferred, to the persons named, or to their nominees: 1. J. F. Toner 600 shares common stock 2. Elmer W. Johnson 150 shares preferred stock Thereupon on motion duly made, seconded, and carried, Paul J. Toner not voting, the Board, in consideration of services rendered by the said Paul J. Toner for acquisition of contracts, franchises, and other business for and on behalf of the company, authorized and directed the Secretary to issue to Paul J. Toner, or to his nominee, two hundred (200) shares of common stock of the corporation. 5. The J. F. Toner mentioned above is the father of the petitioner. 6. Subsequent to the organization meeting, payments were made by J. F. Toner for the shares of common stock as follows: Accounts Receivable, Merchandise
Inventory, Furniture & Equip-
ment valued at
$10,937.59
Balance in cash
49,062.41
A total amount of
$60,000.00
7. On April 24, 1940, 150 shares of the preferred stock was issued to Elmer W. Johnson who had previously advanced $15,000.00 in cash payment for same 8. The 600 shares of common capital stock paid for by J. F. Toner were issued on April 24, 1940, as follows: 500 shares to J. F. Toner 100 shares *7 to N. B. Toner (his wife) 9. On April 24, 1940, the 200 shares of common stock authorized to be issued to Paul J. Toner were issued as follows: 120 shares to Paul J. Toner, and at his request 40 shares each were issued to his sister and brother, H. M. Toner and John Toner, Jr. 10. Prior to the organization of Toner's Inc., the petitioner and his father had been associated for twenty years in the distribution of food products. They were employed by Martin Bros. Co., a Colorado corporation; J. F. Toner as General Manager and his son, the petitioner, in varying capacities, but during the past ten years prior to April 1942, as Sales Manager. 11. The merchandise inventory, fixtures, and equipment turned in as payment for stock by J. F. Toner had been purchased within the previous month from Martin Bros. Co.
12. The lines of merchandise taken over from Martin Bros. Co., represented approximately 75% of the business previously handled by that corporation. The customers were the same. The office personnel and the selling force, with very few exceptions, were the same. [Opinion] The Internal Revenue Code (section 22) requires that there be included in gross income "gains, profits, *8 and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid * * *." The corporation minutes state that the stock was to be and was, issued to petitioner "in consideration of services rendered by" him. There is no dispute between the parties as to the value of the stock. The measure of the income is such fair market value, or $15,000. J. K. McAlpine Land & Development Co., Ltd., 43 B.T.A. 520, affirmed 126 Fed. (2d) 163. Inferentially all of this is admitted; for petitioner's brief is devoted exclusively to the applicability of section 107, supra. Consideration will now be given to this argument. It is true, as petitioner, points out, that the section was enacted for the purpose of relieving a "taxpayer from paying in one year a high bracket tax on income that includes the earnings of five years or more." Cf. John Bell Keeble, Jr., et al., 2 T.C. 1249. But the section is not necessarily operative simply because a taxpayer has received, in a lump sum, compensation for services. Proof must be made that the compensation was received *9 "for personal services rendered * * * covering a period of five calendar years or more from the beginning to the completion of such services" and that not less than 95 per centum was paid "only on completion of such services." It cannot be determined on the present record that the personal services rendered by this petitioner had covered a period of five calendar years or more. Indeed the inference is to the contrary. It is difficult to believe that "the acquisition of contracts, franchises, and other business for and on behalf of the company" had begun years prior to its organization. It is far more reasonable to assume that such "acquisition" was contemporaneous with or immediately prior to the organization. As a matter of fact this really seems to be petitioner's view; for on brief it is said: The acquisition of contracts and franchises involved no particular immediate service on the part of the petitioner except to notify the manufacturers, who had the placing of the contracts to handle their products, that he was to be associated with Toner's Inc. The manufacturers knowing the distribution of their products would be greater if handled through a concern that had the benefit of *10 the petitioner's experience and contacts with the retail outlets, placed their contracts with the corporation with which he was associating himself. Petitioner's view seems to be that because he had worked several years to bring himself to a point where he could attract business to any firm with which he should become associated, any bonus paid to him for the business thus secured must necessarily be compensation for services rendered covering several prior years and hence taxable in the special manner prescribed by section 107. The premise, in our judgment, is erroneous and the conclusion unsound. The statute was enacted because it was considered to be "a hardship to tax fully the competition of * * * [those] who work for long periods of time without pay and then receive their full compensation upon the completion of their undertaking." [2] For aught shown by this record petitioner received full compensation for the services rendered to the Martin Co. The compensation presently in issue was received for services rendered or to be rendered for the new corporation in the taxable year. It was properly taxed in that year. *11 Petitioner, in our judgment, has failed to prove that the Commissioner erred in determining the deficiency in tax. We therefore decline to set it aside. Decision will be entered for the respondent. Footnotes
1. SEC. 220. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF FIVE YEARS OR MORE. (a) The Internal Revenue Code is amended by inserting after section 106 the following new section: "SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF FIVE YEARS OR MORE. "In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal protions in each of the years included in such period." (b) The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1938.↩
2. Report of Committee on Finance, Rep. No. 648, 76th Congress, 1st Session.↩